## Huntzinger *versus* Commonwealth.

1. In order to support a judgment of restitution, under the provisions of the Act of March 31st 1860, sect. 179, Pamph. L. 425, the indictment must show that the money or other valuable thing was actually obtained and taken by the defendant. It is not sufficient that the fact appears outside of the record.

2. A. and B., were indicted for conspiring to defraud C., by falsely representing to him that a certain banking institution whereof they were officers was solvent, whereby C. was induced to deposit money therein, although the said A. and B. knew that said institution was wholly insolvent. *Held,* on conviction, that as there was no allegation that A. or B. had taken C.'s money, a judgment of restitution under the provisions of the Act of March 31st 1860, sect. 179, Pamph. L. 425, against them was improper, and should be reversed.

3. An allowance or refusal of a writ of error is not an adjudication that error does or does not exist. Hence when an allocatur in a criminal case is at first refused, but subsequently allowed, the first refusal constitutes no bar to a review of the case upon its merits.

March 4th 1881.   Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

Error to the Court of Quarter Sessions of *Berks county:* Of January Term 1880, No. 108.

This was an indictment against Jacob Huntzinger and J. Albert Huntzinger, in the Court of Quarter Sessions of Schuylkill county, for conspiracy to cheat and defraud, founded upon the oath of Thomas F. Kerns, prosecutor, who was a clerk of the said court. The venue was subsequently changed to Berks county.

The indictment contained two counts. The first charged that the defendants being respectively president and cashier of the Miners' Trust Company Bank of Pottsville, a corporation, "did falsely and maliciously combine, conspire, confederate and agree together to cheat and defraud Thomas F. Kerns of a large sum of money, to wit, the sum of twenty-four thousand dollars, by means of falsely and fraudulently representing to the said Thomas F. Kerns that the said The Miners' Trust Company Bank of Pottsville was solvent and able to pay all its liabilities, and thereby inducing him to deposit in the said The Miners' Trust Company Bank of Pottsville, the said sum of twenty-four thousand dollars, whereas in truth and in fact the said Jacob Huntzinger, president, as aforesaid, and the said J. Albert Huntzinger, cashier,

[Huntzinger v. Commonwealth.]

as aforesaid, well knew, at the time that the representations, as aforesaid, were made, that the said corporation was wholly insolvent and unable to pay its liabilities, to the great prejudice of the said Thomas F. Kerns, contrary to the form of the Act of the General Assembly, in such case made and provided, and against the peace and dignity of the Commonwealth of Pennsylvania."

The second count charged that the defendants "did falsely and maliciously combine, conspire, confederate and agree together to cheat and defraud Thomas F. Kerns of a large sum of money, to wit, the sum of $24,000, to the great prejudice of the said Thomas F. Kerns, contrary to the form of the act."

On the trial, before HAGENMAN, P. J., the defendants presented the following point: "That part of the sentence, in case of conviction under this indictment, must be that the defendants make restitution to the prosecutor. That it is the policy of the law to discourage criminal prosecutions to enforce redress for private injuries, but the true policy of the law is to require parties to seek redress in the civil courts for private wrongs." The record failed to show whether this point was affirmed or not.

The court charged the jury, inter alia, as follows:—

"This indictment contains two counts. The first alleges not only that the defendants conspired to cheat and defraud the prosecutor, but that they fully executed the conspiracy by the false representations and pretences therein specially mentioned. * * * But the Commonwealth ask for a conviction upon the first count of the indictment with a view to a judgment of restitution, if the defendants are found guilty. In order therefore to find the defendants guilty under this count, the jury must not only find that the defendants conspired to cheat and defraud Thomas F. Kerns, the prosecutor, but they must also find that the conspiracy thus formed was fully carried out, and that Kerns was actually defrauded of the moneys charged in the indictment."

Verdict guilty in manner and form as indicted. The following judgment and sentence was subsequently entered:

"And now, to wit: January 22d 1878, the sentence of the court is, that you, Jacob Huntzinger and J. Albert Huntzinger, pay a fine of five hundred dollars ($500) to the Commonwealth for the use of the county of Berks; that you restore and pay to the prosecutor, Thomas F. Kerns, the property of which he was defrauded, to wit, the sum of twenty-four thousand dollars ($24,000), unless you have already done so; that you undergo imprisonment in the Berks county jail by separate and solitary confinement at labor for the period of two years, to be computed from this day; that you pay the costs, and stand committed until this sentence is complied with."

Immediately after the sentence was pronounced counsel for the defendants made application to this court for a special allocatur

1 OUTERBRIDGE—22

[Huntzinger *v.* Commonwealth.]

which, on January 28th 1878, was refused, the court filing the following order:

"This petition and the accompanying documents having been fully considered by the court, it is thought that no sufficient and substantial error appears to order an allowance of a writ of error.

"Allocatur therefore refused.

"PER CURIAM."

Subsequently, in vacation, another application for an allocatur was made to PAXSON, J., who allowed the same. The defendants thereupon took this writ of error, assigning for error that part of the judgment and sentence which required the defendants to "restore and pay to the prosecutor, Thomas F. Kerns, the property of which he was defrauded, to wit: The sum of twenty-four thousand dollars, unless you have already done so," * * * "and stand committed until this sentence is complied with."

*George F. Baer* (with whom were *G. E. Farquahar* and *F. W. Hughes*), for the plaintiffs in error.—The Act of March 31st 1860, sect. 179, Purd. Dig. 371, pl. 299, is the act by virtue of which the court assumed to enter judgment and sentence for restitution. It is the only act on the subject and provides as follows:—

"On all convictions for robbery, burglary or larceny of any goods, chattels or other property, made the subject of larceny by the laws of this Commonwealth, or for otherwise unlawfully and fraudulently taking or obtaining the same, or of receiving such goods, chattels or other property, knowing the same to be stolen, the defendant shall, in addition to the punishment heretofore prescribed for such offences, be adjudged to restore to the owner the property taken, or to pay the value of the same, or so much thereof as may not be restored. And on all convictions on any indictment for forgery, for uttering, publishing or passing any forged or counterfeit coin, bank-notes, check or writing, or any indictment for fraudulently, by means of false tokens or pretences, or otherwise, cheating and defrauding another of his goods, chattels or other property, the defendant, in addition to the punishment hereinbefore prescribed for such offences, shall be adjudged to make similar restitution, or other compensation, as in case of larceny, to the person defrauded: Provided, That nothing herein shall be so construed as to prevent the party aggrieved, and to whom restitution is to be awarded, from being a competent witness on the trial of the offender."

The commissioners to revise the penal code say, p. 37: "This section is the consolidation, revision and extension of the various Acts of Assembly providing for the restitution of property feloniously or unlawfully taken from the rightful owner. Restitution in cases of forgery, counterfeiting, fraudulent uttering and publishing

[Huntzinger v. Commonwealth.]

counterfeit coin or bank-notes, and cheating by false pretences, are additions to existing laws."

We contend that this statute does not authorize a sentence of restitution upon a conviction on an indictment for conspiracy. Conspiracy is not mentioned in the recital or definition of crimes mentioned. Being a highly penal statute it must be construed strictly. It was designed to cover larceny and similar crimes where the gist of the offence is the unlawful taking of another's goods. Conspiracy is a radically different crime—being the unlawful combination and agreement of two or more persons to do an unlawful (or a lawful) act. The offence is complete even though no act be done in pursuance of the conspiracy: Sharswood's Blackstone Com., book 4, p. 136. The indictment in this case charges the technical statutory offence of conspiracy only, it does not charge a pursuant act, in fraudulently taking the money of the prosecutor. The prosecutor is left to his civil action to redress the private wrong if his money was actually taken. Restitution cannot apply where the indictment does not charge the taking of goods. If it did, how is the amount to be liquidated? The verdict was "guilty in manner and form as they stand indicted," i. e., guilty of an unlawful combination—not guilty of unlawful taking. The Constitution declares an accused cannot be deprived of property unless by the judgment of his peers. No power to fix the value exists by law in the judge. In a civil case the amount could be fixed by a jury..

*A. W. Schalck*, District Attorney for Schuylkill county (with him *William N. Goodman*, District Attorney for Berks county, *William B. Mann, Lin Bartholomew, Francis W. Bechtel, H. C. G. Reber, Daniel* and *James Ermentrout*), for the Commonwealth.—It was perfectly proper to charge in the indictment both the conspiracy and its execution, for it was all one transaction. One charge will often include another, as robbery includes assault and battery, and also larceny.

[TRUNKEY, J.—Where does the indictment charge that the defendant actually got the money?]

The first count of the indictment was intended to charge an *executed conspiracy*, and it was so treated by the court and the counsel on both sides. Although the language is not very strong it may well be so construed.

The Act of 1860 was a sweeping consolidation of the criminal law. The language is very broad, and was intended to provide for restitution in all cases where the defendant had obtained property by cheating, embezzlement, conspiracy, &c. The act provides that judgment of restitution shall be "in addition to the punishment heretofore prescribed." Where the testimony shows the value of the goods, or where the case involves a definite sum of money,

named in the indictment and established by the evidence, there is no difficulty in the court fixing the amount to be restored.

Mr. Justice TRUNKEY delivered the opinion of the court, March 28th 1881.

The indictment charges that Jacob Huntzinger, president, and J. Albert Huntzinger, cashier of the Miners' Trust Company Bank, of Pottsville, a corporation, did conspire to cheat and defraud Thomas F. Kerns of twenty-four thousand dollars by means of falsely and fraudulently representing to said Kerns that said bank was solvent, and able to pay all its liabilities, and thereby inducing him to deposit in said bank the said sum of twenty-four thousand dollars, whereas the said Jacob and J. Albert, president and cashier as aforesaid, well knew said corporation was wholly insolvent, and unable to pay its liabilities. Of this conspiracy the defendants were convicted and sentenced to imprisonment, to pay a fine, to pay the costs, and to restore or pay to Thomas F. Kerns twenty-four thousand dollars. The sole question is, whether the indictment supports a judgment of restitution. It is not now and here gainsaid that the judgment in all other respects was right.

The offence of conspiracy is clearly and sharply set forth in each of the two counts in the indictment. Had Kerns not lost a dollar, on proof of the alleged conspiracy the defendants could have been as well convicted on the first as the second. In the first count only the means for accomplishment of their purpose are stated, namely, false and fraudulent representations to Kerns respecting the solvency of a corporate bank, thereby inducing him to deposit twenty-four thousand dollars in said bank. It is obvious that the Commonwealth intended to state only the means intended to be used by the conspirators. Direct averment is not made that Kerns did deposit said money or that he lost the money. Certainly it cannot be inferred from anything in the indictment that the defendants themselves took or obtained the money, for it is a mere inference from the means they devised by which it may be said that the corporation got the money. If the part charging conspiracy be struck out, no crime or misdemeanor is stated in the indictment.

The conspiracy is complete when the parties have made the unlawful confederacy, and, therefore, it does not include another offence; as burglary is completed before other felony, which the burglar intended, is committed. Unless the crime besides the conspiracy, or the felony besides the burglary, be distinctly charged, there can be no conviction for anything but the alleged offence. These and like cases differ wholly from those where the greater include the less, or where by statute a person indicted for felony may be convicted of a misdemeanor. The Commonwealth could have preferred a count, charging the defendants with conspiracy,

[Huntzinger v. Commonwealth.]

setting forth the means they used, and averring that with intent to cheat and defraud Kerns, they obtained from him twenty-four thousand dollars. But nothing more than conspiracy by the Huntzingers is pleaded. They are not charged with having taken or obtained the money from Kerns.

The 179th section of the Crimes Act of 1860 is very broad, requiring in almost every criminal offence, including in its perpetration the obtaining of money or other valuable thing, in addition to the prescribed punishment, that the defendant shall be adjudged to restore to the owner such money or property, or pay him the value thereof. But the indictment must show that property was taken or obtained. It does this, of course, in robbery, larceny, false pretences and other crimes, which are not committed unless property be taken. Forgery is named in said section of the statute, yet one may commit forgery and not succeed in obtaining money or goods of another. Burglary is also named, but it is burglary of property, not burglary with intent to steal or do other felony. Conspiracy to cheat and defraud is not named, and if it is embraced it must only be when it has been executed. In every case, to support a judgment of restitution, the indictment must show that the money or other thing was actually obtained and taken by the defendant. This is as essential as that the indictment must show an offence punishable by a fine or imprisonment to support a judgment that the defendant pay a fine or undergo imprisonment. The record must be self-sustaining. A judgment without indictment or for an offence not charged in the indictment must fall. Divers statutes impose increased punishment on second conviction for certain offences, but unless the former conviction be stated in the indictment, the court cannot impose the increased punishment. Rauch v. Commonwealth, 28 P. F. Smith 490. In that case, AGNEW, C. J., said: "On every principle of personal security and the due administration of justice, the fact which gives rightfulness to the greater punishment should appear in the record. To leave a judge to determine outside of the record is to subject the defendant to an unconstitutional mode of trial." And this language is just as apposite, where judgment of restitution is claimed, if the indictment does not charge the taking or obtaining of the thing asked to be restored.

It is scarcely necessary to remark that this case must be determined by the record. We are not unmindful of the argument on the part of the Commonwealth, but we fail to see how the points submitted by the defendants at the trial, and the charge of the court can have other effect than to induce care in consideration of the points now presented.

Nor is the narrative of the conduct of the Huntzinger family a prop to the judgment. Nor has there been a previous adjudication by this court. An allowance or refusal of a writ of error is not an

[Huntzinger *v.* Commonwealth.]

adjudication that error does or does not exist. If it were, allowance would be equivalent to reversal, and refusal by the court or a judge in vacation, would be an affirmance without a hearing. When the record was presented, within a few days after the sentence, attention was directed to matters that struck at the trial, claimed by defendants as cause for entire reversal and another trial, and the clause of the judgment now assigned for error escaped consideration. When this clause was brought to the attention of Justice PAXSON in vacation, and he was convinced the question raised was of so much doubt that it ought to be argued before and considered by the court, he properly allowed the writ.

The part of the judgment in these words, "that you (Jacob Huntzinger and J. Albert Huntzinger) restore and pay to the prosecutor, Thomas F. Kerns, the property of which he was defrauded, to wit, the sum of twenty-four thousand dollars ($24,000), unless you have already done so," is reversed.