## Commonwealth v. Fenicio.

*Justice of the peace—Summary conviction—Allowance of certiorari—Discretion of court—Possession of arms by unnaturalized alien—Acts of May 8, 1909, and July 11, 1917.*

1. An allowance of a *certiorari* to a summary conviction before a justice of the peace is a matter within the discretion of the court, and in order to impel the court to exercise such discretion, there ought to be more than mere informality or irregularity.

2. A *certiorari* to a summary conviction of an unnaturalized alien for having arms in his possession, in violation of the Act of May 8, 1909, P. L. 466, as amended by the Act of July 11, 1917, P. L. 779, will not be allowed where the petition for the writ does not deny the defendant's guilt or that he was an unnaturalized alien, but merely sets up an alleged defect in the affidavit preliminary to the search warrant, and that the evidence did not disclose that defendant was an unnaturalized foreign-born resident.

Petition for writ of *certiorari* to conviction before justice for violating section 1 of the Act of July 11, 1917, P. L. 779, amending the Act of May 8, 1909, P. L. 466. C. P. Jefferson Co., Aug. T., 1923, No. 373.

*Charles J. Margiotti* and *A. S. Scribner,* for petition.

CORBET, P. J., July 9, 1923.—When the Constitution, in section 10 of article V, provided that "the judges of the Courts of Common Pleas, within their respective counties, shall have power to issue writs of *certiorari* to justices of the peace," it left with them to determine, in their discretion, when the power should be exercised.

When applying for a special allowance of the writ, in case of a summary conviction, a defendant should frankly open up his case to the court so as to show more than that he seeks to escape a righteous conviction on technical grounds. In the present instance the defendant has appended to his petition an affidavit that the proceedings, "if not removed, will cause him to pay more money than is justly due," when it would be more to the point, and of greater importance, were he to aver that he is not guilty of the charge. Nor does he, in his petition, deny his guilt.

The writ is asked for the following reasons, to wit:

"*(a)* The affidavit preliminary to the search warrant sets forth no probable cause for believing in such concealment as required by the statute, but merely sets forth ground for suspicion.

"*(b)* The proceedings are not begun by affidavit as required by the act of assembly.

"*(c)* The evidence does not disclose that the defendant was an unnaturalized foreign-born resident within this Commonwealth."

The act to which *(a)* refers—section 6 of the Act of May 8, 1909, P. L. 466 (467)—says: "and any or either of such officers shall have the right and power, *where they suspect* the concealment by an unnaturalized foreign-born resident of guns of the before-mentioned kind, to apply to any court having jurisdiction of the offence, within the Commonwealth, who, upon receipt of proof made by affidavit of the probable cause for believing in such concealment, shall issue a search warrant and cause a search to be made in any place."

The police officer in his affidavit swore "that *he* does suspect, and has reason to suspect, that on July 3, 1923, and within the county and State aforesaid, one Tony Finnecio did wilfully and unlawfully violate section 1 of the Act of July 11, 1917, in that the said Tony Finnecio has resided in this Commonwealth for the last sixty days, and that he is an unnaturalized foreign-

born resident, and on the above-mentioned date he had in his possession or under his control, to wit, dog, gun or revolver. All of which is in violation of the act of assembly in such case made and provided, and against the peace and dignity of the Commonwealth of Pennsylvania."

By this affidavit the officer states *he* suspected the concealment, and, as a whole, the affidavit amounts to proof of probable cause for believing in such concealment, which, as a fact, was established by the discovery and capture on defendant's premises of a single-barreled shot-gun. Reason *(a)* is, therefore, not well founded; indeed, the act, in the particular mentioned, appears to have been very accurately complied with.

Enough has been said to indicate that reason *(b)* is also without weight.

If testimony is meant by the word "evidence," used in reason *(c)*, it is no part of the record (Com. *v.* Gipner, 118 Pa. 379; Com. *v.* Wright, 35 Pa. C. C. Reps. 289), and, therefore, cannot be considered to determine the accuracy or inaccuracy of the statement that it "does not disclose that the defendant was an unnaturalized foreign-born resident." If defendant is a native-born or naturalized resident, why did he not, as he could and should have done, set up that fact as a defence at the hearing (Com. *v.* Muffley, 12 Dist. R. 365), or why has he not averred it in his petition, instead of evasively saying "the evidence does not disclose that" he "was an unnaturalized foreign-born resident?" But he did neither. The justice's transcript states that "defendant offered no testimony in his own defence," and that, "after hearing all the evidence produced on the part of the Commonwealth, I, the justice find the defendant guilty of violation of section 1 of the Act of July 11, 1917, of aliens having in possession firearms." And when we consider that it is only "an unnaturalized foreign-born resident" who can be convicted under the act, we are entirely satisfied the record adequately discloses the defendant to have been such "an unnaturalized foreign-born resident."

In Com. *v.* Miller, 4 Luzerne Legal Reg. 9, it is said: "On a *certiorari*, we will not treat the record of a summary conviction as if the case was before a court for the correction of errors on bills of exception. But looking at the whole record, if sufficient evidence, properly admitted, appears to warrant the conviction, we will affirm the proceedings."

In Com. *v.* Challis, 8 Pa. Superior Ct. 130, it is said by Smith, J.: "We are not disposed to scrutinize the records of justices of the peace with hypercritical nicety in order to discover technical defects upon which to defeat their judgments. Where it appears, in substance, that the justice had jurisdiction of the cause of action and of the parties, their judgments will be sustained, regardless of the want of technical form in the proceedings."

Where the court is convinced the defendant violated the law and that no injustice was done him, it will refuse an *allocatur* for a *certiorari*: Com. *v.* Weiler, 2 Lehigh Co. L. J. 52. The writ will not be allowed for informality or legal defects only, where full opportunity for the defendant was presented before the justice, in the absence of oppression or corruption, some doubtful legal question involved relating to the interpretation of the statute under which the prosecution was had, or after-discovered evidence of a substantial kind which ought to affect the result: Com. *v.* Coleman, 10 Northamp. Co. Repr. 220. "It cannot, of course, be true that any defect in the record of the magistrate is ground for the allowance of the writ, even if it be such as upon *certiorari* would be sufficient for reversal. If that were conceded, the allowance would be inevitable wherever a *certiorari* could be sustained; the allowance or refusal of it would be virtually an adjudication against or in favor of the validity of the magistrate's judgment, and there would be no sense, but

4 D. & C.

positive impropriety, in requiring the special allowance of the writ instead of permitting it to issue as of course. The refusal of it, however, like the refusal of an *allocatur* for a writ of error by the Supreme Court (see Huntzinger *v.* Com., 97 Pa. 336), is not an adjudication that no error has been committed. It is simply a refusal, under the circumstances as presented, to review the proceedings before the magistrate. In order to impel the court to exercise its discretion to review it, there ought to be more than informality or irregularity—more than the mere absence from the record of that which affirmatively excludes the predication of error—something to indicate that substantial justice has not been done, that the applicant has been deprived of some right, subjected to some wrong; that the alderman misconstrued the law he was proceeding under; that he acted dishonestly, in disregard of the law, or the like:" Endlich, P. J., in Com. *v.* Rhoads, 2 Berks Co. L. J. 148.

For the reasons indicated, the application for writ of *certiorari* must be refused.                           From Raymond E. Brown, Brookville, Pa.