Com. of Pa. *v.* Boyle, Appellant.

Argued March 14, 1933.

Before TREXLER, P. J., KELLER, CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and JAMES, JJ.

*Thomas O. Haydock, Jr.,* and with him *Charles L. Smyth,* for appellant.

*Clement J. McGovern,* Assistant District Attorney, and with him *Wm. J. MacCarter, Jr.,* District Attorney, for appellee.

OPINION BY BALDRIGE, J., April 17, 1933:

The appellant, Thomas E. Boyle, and Irwin G. King were indicted on the information of William J. Brennan, investigator for the Securities Commission of the Commonwealth, charging them with violation of, and conspiracy to violate, the Securities Act of April 13, 1927, P. L. 273 (70 PS §1 et seq.). King entered a plea of non vult contendere, and Boyle was found guilty of the violation of the Securities Act, and acquitted on the charge of conspiracy.

We will consider, first, the assignment of error relating to the failure of the trial judge to quash the indictment. The grounds, in support thereof, are that the bill of indictment did not set forth that the offenses charged were not covered by exceptions in the Securities Act, and that the only witness before the grand jury was one, William J. Brennan, who testified wholly from hearsay. This motion was properly overruled by the learned trial judge, as it did not comply with the

rules of court of Delaware County, which provide that a motion to quash an indictment shall be made in writing within two days of the finding of a true bill by the grand jury, and that the motion shall be served on the district attorney or an assistant, with notice of the time for argument, etc. The violation of the rules of court, which we deem reasonable, was sufficient reason to overrule the motion. We recognize the right of a court to depart from its regulations of procedure, which are not statutory, but there was no injustice imposed by not doing so. Aside from this technical objection to the procedure, there is no merit in the reasons advanced to quash. The bill of indictment had endorsed thereon the names of two witnesses, and there is no proof that they were not before the grand jury, or that they testified only from hearsay. Furthermore, the bill of indictment was not required to set forth that the offenses charged were not covered by exceptions in the Securities Act. This question was passed upon in Com. v. Johnson, 89 Pa. Superior Ct. 439, and Com. v. Freed, 106 Pa. Superior Ct. 529, 162 A. 679, 684.

This brings us to the question of the sufficiency of proof on behalf of the Commonwealth. Section 3 of the Securities Act (70 PS §3), under which the bill of indictment was drawn, provides, inter alia: "No salesman or agent shall, in behalf of any dealer, sell, offer for sale, tender for sale or delivery, or solicit subscriptions to or orders for, or dispose or undertake to dispose of, or invite offers for or inquiries about, any securities within this state, unless registered as a salesman or agent of a dealer under the provisions of this act."

Section 22 (70 PS §22) deals with false statements, fraud or fraudulent practices, by any agent, salesman or employee.

On July 13, 1931, the appellant, who, admittedly,

was not a registered salesman, sold to James Andrew Broscombe, $1,000 worth of stock in Warren Life Underwriters, Inc. The Commonwealth alleged that Boyle made a second sale to Broscombe, on August 5, 1931, of the same stock, in the amount of $1,200. The defendant's contention was that the second transaction did not constitute a sale, but was, in reality, a loan from Broscombe to King and him, and that he came within the exception in section 2c (3), (70 PS §2c (3) ), which reads: "In an isolated transaction in which any security is sold or offered for sale, subscription or delivery not being made within the course of repeated and successive transactions of a like character by such owner or on his account by such representative or agent, and such owner or representative or agent not being the underwriters of such security." True, Boyle and King executed and delivered a note to Broscombe, but the latter's explanation of the note was that Boyle told him that the stock would not be ready for delivery until three months thereafter, and that he was induced to take the note, in the sum of $1,320, as he would thereby make $120, and obtain the stock at the termination of three months. It was necessary for Broscombe to obtain $1,100 on two insurance policies in order to raise the $1,200. It seems highly improbable that Broscombe would borrow $1,100 to make up a loan of $1,200 to two men he had met first on July 5th. Broscombe testified that Boyle said he would have the advantage of buying underwriter's stock that would yield him 12 per cent; that "it was a fine investment and far better than having the money in the bank;" that Boyle produced a book showing the names of 40 priests, and emphasized that Monsignor Murphy wanted more stock than he already had, but that one person was allowed to buy only $1,000 worth, but that he was able to give Broscombe a little more because Father Brown was going to take

only $500 worth, and his housekeeper had intended to buy $1,000 of the stock, but she concluded not to take it; that he was not "letting people have as much as they wanted." Mrs. Broscombe's testimony was somewhat vague, but she did corroborate her husband's statement that the agreement was to buy the stock. King was called in rebuttal and said that he was present when Boyle sold the stock to Broscombe; that Broscombe, his wife, Boyle and he were in the Broscombe's living room, where the conversation was entirely relative to the sale of the stock; that Boyle and Broscombe went into the dining room and returned in about ten minutes; that "then Mr. Boyle said Mr. Broscombe was going to loan us the $1,200 and that we were going to pay him ten per cent, making a total of $1,320, and pay him six per cent interest on a 90-day note." King testified further that he went with Boyle to see Father Brown and remained in the machine, about 50 feet away. When Boyle returned, he said he had a $500 note on account of a stock transaction; that at different times Boyle mentioned to him that he had sold stock to Father Loftus; and that persons whom Boyle and he interviewed in regard to taking insurance were invariably solicited for the purchase of stock.

The evidence offered upon the part of the Commonwealth, if believed by the jury, was sufficient for them to say that the defendant had not made an isolated sale, and that he was acting as an agent, as defined in section 2 (d) of the Securities Act (70 PS §2 (d)), which reads as follows: "The term 'salesman' shall, except as provided in section 4, include every person or company employed or appointed or authorized by a dealer to sell, offer for sale or delivery, or solicit subscriptions to or orders for, or dispose of inquiries about, or deal in any manner in, securities, within this State, whether by direct act or through subagents."

It was to avoid just such transactions being entered into, by alluring, but unjustified representations of irresponsible vendors of stock to inexperienced and easily-imposed-upon persons, that this wise legislation was enacted.

The defendant complains of the admission of certain testimony of Brennan, investigator for the state department, respecting the facts he had ascertained from an investigation of the books of Warren Life Underwriters, Inc., as to the date of incorporation, amount of the capitalization, ownership of the stock, etc., on the ground that Brennan's testimony was hearsay, and should not have been admitted. This testimony simply tended to identify Warren Life Underwriters, Inc., and was not really essential to the trial of the case, nor was it so prejudicial as to materially injure the rights of King: Kerns v. Ripka, 85 Pa. Superior Ct. 97. The names of certain other parties, to whom stock was transferred, were received by the court, with notice to the Commonwealth that if the defendant was not connected with the transfer, their names would be stricken from the record, and, later, the court did eliminate that part of the testimony. We find no merit to the criticism of the trial judge's action.

The appellant further complains of the judge's failure to caution the jury in accepting the evidence of King, the alleged accomplice. The appellant failed to raise this objection in "Questions Involved," and, therefore, it is not entitled to consideration. We may add, however, that, here, as in Com. v. Elliott, 292 Pa. 16, 140 A. 537, there was sufficient corroboration, and, therefore, as Mr. Chief Justice von Moschzisker said (p. 24), "as a matter of law the lack of such an instruction will not constitute reversible error unless a clear abuse of judicial discretion appears." We find no abuse of judicial discretion present in this case.

604

We have examined with care the other assignments, but find no reversible error.

The sentence imposed was "to pay a fine of $500 and costs of prosecution, undergo imprisonment in the county jail for two months minimum to two years maximum from today ...... this defendant to make restitution in the sum of $600 to James Broscombe." Section 22 of the Securities Act, supra, under which the indictment was founded, makes no provision for restitution, as does the Act of March 31, 1860, P. L. 382, §179 (19 PS §981) (relied upon by the Commonwealth), which provides: "On all convictions for robbery, burglary or larceny of any goods, chattels, or other property, made the subject of larceny by the laws of this Commonwealth, or for otherwise unlawfully and fraudulently taking or obtaining the same, or of receiving such goods, chattels, or other property, knowing the same to be stolen," etc. This part of the sentence, ordering restitution of $600, was erroneous, and is hereby eliminated.

The judgment is affirmed as modified, and the record remitted to the court below for the defendant to comply with that part of the sentence of the court which has not been performed.