Commonwealth *v.* Flashburg, Appellant.

Argued June 12, 1975. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*William H. Platt*, Public Defender, for appellant.

*James Knoll Gardner*, Assistant District Attorney, and *George J. Joseph*, District Attorney, submitted a brief for Commonwealth, appellee.

OPINION BY PRICE, J., December 1, 1975:

Although a relatively simple set of facts precipitated this appeal, its resolution has immersed us in a deluge of statutory ambiguity. The issue, quite simply stated, is whether the lower court, indeed any court, had the power between June 6, 1973 and March 30, 1975 to order this appellant, or any criminal defendant, to make restitution as part of a Judgment of Sentence. We hold that there was no such power during that time interval, and, therefore, will reverse.

On December 6, 1973, the appellant, using the name Charles R. Winkler, rented a car from a car-rental agency located in the Allentown-Bethlehem-Easton Airport. Although appellant stated that he only wanted the car for a day, the car was not returned. The agency manager, Mr. Schlauch, discovered that appellant was not Charles R. Winkler, but that identification cards belonging to the real Charles R. Winkler had been stolen. Admirable detective work on the part of Mr. Schlauch resulted in the arrest of appellant and the return of the car on January 23, 1974. On October 9, 1974, appellant pled guilty to charges of theft by deception.

Appellant's sentencing hearing was held on October 30, 1974. The lower court judge, after a lengthy discussion with appellant, learned that appellant had graduated from New York University with a degree in philosophy. He had taken additional courses at the University of Pennsylvania, and had held responsible employment positions. He had also been convicted, in federal court, of transporting stolen securities, and had been sentenced to three years probation. At the time of the sentencing hearing, he was in jail on an unrelated charge, apparently involving narcotics.

At Mr. Schlauch's request, the Commonwealth recommended a sentence requiring appellant to make restitution of $1,215.90 (computed by applying normal rental

rates to the time the car was gone and to the mileage added to the car's odometer).

Appellant's attorney objected on the grounds that restitution was illegal in this case. Appellant, however, stated that he wanted to make restitution. The court then sentenced appellant to pay the costs of prosecution, to make restitution in the amount of $1,215.90, and to undergo imprisonment for a period of not less than six months nor more than twenty-three months. The sentence of imprisonment was suspended and the appellant was placed on probation for a period of forty-eight months.

On January 22, 1975, after reviewing memoranda submitted by counsel, the court modified its previous order by vacating the order with respect to the amount ordered for restitution, and by ordering restitution in an amount to be determined by the Probation Office of Lehigh County. The court based its decision on the fact that the $1,215.90 sum included a certain amount of profit.[1]

The issue in this case is whether the lower court had the power to order appellant to make restitution. This court has held, on several occasions, that a defendant cannot be ordered to make restitution unless restitution is a statutorily authorized penalty. *Commonwealth v. Jackson,* 218 Pa. Superior Ct. 357, 280 A.2d 422 (1971); *Commonwealth v. Gross,* 161 Pa. Superior Ct. 613, 56

---

1. On this appeal, appellant contends that the modifying order is invalid because it was issued beyond the thirty day period during which modification is permitted. Act of June 1, 1959, P.L. 342, No. 70, §1 (12 P.S. §1032) (Supp. 1975-76). The Commonwealth, on the other hand, contends that a court always has the power to correct obvious mistakes in its orders, judgments, and decrees. *Commonwealth v. Cole,* 437 Pa. 288, 263 A.2d 339 (1970). Because our decision in this case would be the same were the appeal from the original order or from the order as modified, we do not decide this question.

A.2d 303 (1948); *Commonwealth v. Rouchie*, 135 Pa. Superior Ct. 594, 7 A.2d 102 (1939) ; *Commonwealth v. Boyle*, 108 Pa. Superior Ct. 598, 165 A. 521 (1933). Therefore, if no statute authorized restitution, the court had no power to order it.[2]

The Commonwealth of Pennsylvania has authorized restitution in criminal cases since passage of the Act of March 31, 1860, P.L. 382, §179 (19 P.S. §981). The power to order restitution was repealed by the Penal Code, Act of June 24, 1939, P.L. 872, §1201 (18 P.S. §5201)., and was restored by the Act of May 27, 1949, P.L. 898, §1, which added §1109 of the Act of June 24, 1939, P.L. 872 (18 P.S. §5109). This last statute (hereinafter referred to as §5109) was substantially amended by the Act of Nov. 27, 1970, P.L. 790, No. 257, §1, and was again amended by the Act of September 22, 1972, P.L. 876, No. 200, §1.

In 1973, the Crimes Code repealed and replaced most of the Penal Code. Act of Dec. 6, 1972, P.L. 1482, No. 334, §5. Until March 30, 1975, however, the Crimes Code did not specifically authorize courts to order restitution in criminal cases. The appellant contends, then, that the power to order restitution did not exist in Pennsylvania between the date of repeal of the Penal Code, June 6, 1973, and the effective date of §1321(c) of the Crimes Code, March 30, 1975.

The Commonwealth, however, contends that 1 Pa. C.S. §1952 (Supp. 1975-76) (hereinafter referred to as §1952)

---

2. Although there is, at present, little law on the subject, indications are that any penalty imposed for criminal conduct must conform strictly to what has been authorized by statute. *See Weems v. United States*, 217 U.S. 349 (1910) ; *In re Graham*, 138 U.S. 461 (1891) ; 21 Am. Jur., 2d, *Criminal Law* §535 (1965). This would be especially true of a jurisdiction, such as Pennsylvania, which has completely codified its criminal laws. 18 Pa.C.S. §107(b). *Cf., Commonwealth ex rel. Varronne v. Cunningham*, 365 Pa. 68, 73 A.2d 705 (1950).

renders §5109 still effective.[3] Section 1952 provides: "Whenever any existing statute, incorporated into and repealed by a code, is also amended by other legislation enacted at the same General Assembly, such separate amendment shall be construed to be in force, notwithstanding the repeal by the code of the statute such other legislation amends, and such amendment shall be construed to prevail over the corresponding provisions of the code."

At first glance, one suspects that this statute is ambiguous. A deeper examination removes all doubt. The Commonwealth's contention is that, because §5109 was amended by the same General Assembly that enacted the Crimes Code, §5109 supersedes the repealer.

The appellant counters with Section 4 of the Crimes Code. Section 4 provides: "Sections 72[4] and 94 of the Statutory Construction Act shall not be applicable to any provision of Title 18 of the Consolidated Pennsylvania Statutes (relating to crimes and offenses) *as added by this act,* except Article G (relating to miscellaneous offenses) of Part II (relating to definition of specific offenses)." (emphasis added)

The appellant argues that Section 4 prevents the application of §1952 to this case. Thus, §5109 was effectively repealed. The Commonwealth counters this argument by contending that, because no provision dealing with restitution was added to Title 18 of the Consolidated Pennsylvania Statutes by the Act of Dec. 6, 1972, as required by Section 4, Section 4 does not apply, §1952 does apply, and the lower court had the power to order restitution.

---

3. This view is shared by the editors of *Purdon's Pennsylvania Statutes Annotated.* See the historical note following §5109 of former Title 18 in the Appendix to the Crimes Code, 18 Pa.C.S.

4. Section 72 of the Statutory Construction Act, Act of May 28, 1937, P.L. 1019, art. v, §72 (46 P.S. §572), *repealed,* Act of Dec. 6, 1972, P.L. 1339, No. 290, §4, formed the basis for §1952, enacted as part of the Statutory Construction Act of 1972.

## SECTION 1952

Section 1952 begins as follows: "Whenever any existing statute, incorporated into and repealed by a code. . . ." We believe that this statute contemplates the case where a new code contains a counterpart of the repealed statute. Where there is a conflict between the amendments to the old statute and the counterpart in the code, the amendments prevail. This view is supported by the title of §1952: "Effect of separate Amendments on code provisions enacted by same General Assembly." It seems abundantly clear that §1952 contemplates a counterpart provision in the new code on which the amendments can have an effect. Thus, where, as here, there is no "corresponding provision" in the code, and where the existing statute is not "incorporated into" the code, §1952 does not apply.

A second reason for our conclusion that §1952 does not apply, is that §1952 only validates "separate amendments." To apply §1952 to a case where the separate amendments cannot exist independently, and where there is no corresponding provision in the new code, would have an absurd result. We picture the case where all but a few words of an amended statute have been effectively repealed.[5] Thus, the choice would be between enforcing the entire statute as amended, or not enforcing any amendment that cannot exist independently.

On the other hand, where the amendments are held only to prevail over corresponding provisions in a new code, §1952 is capable of sensible effectuation. The separate amendments are enforceable, whether they can

---

5. In this case, the 1972 amendments empowered district justices to order restitution, that power having been limited to the courts of common pleas by the unamended statute. Therefore, giving effect to the amendments would result in district justices having power to order restitution, but not the courts of common pleas.

exist independently or not, because they are based on an existing, enforceable statute.

Therefore, because the Crimes Code contained no provision corresponding to §5109, §1952 does not apply to this case, §5109 was repealed, and the lower court had no power to order restitution.

## SECTION 4 OF THE CRIMES CODE

The Commonwealth argues that Section 4 of the Crimes Code does not apply to this case because no section pertaining to restitution was added by the Crimes Code.[6] Section 4 applies to "provision[s] of Title 18 of the Consolidated Pennsylvania Statutes . . . as added by this act. . . ." To say that Section 4 literally applies only to provisions added by the Crimes Code, would mean that Section 4 could become operative only if the General

---

6. The Commonwealth might argue that Section 4 does not prevent the application of §1952 for another reason. Section 4 states that Sections 72 and 94 of the Statutory Construction Act (46 P.S. §§572 and 594) "shall not be applicable to any provision of Title 18 of the Consolidated Pennsylvania Statutes . . . as added by this act," except for certain exceptions not here relevant. Section 4 became effective on June 6, 1973. Sections 72 and 94 of the Statutory Construction Act were repealed prior to that date, on December 6, 1972. Act of Dec. 6, 1972, P.L. 1339, No. 290, §4. Thus, literally, Section 4 does not prohibit the application of §1952.

The reason for this legislative error is obvious. Section 6 of the Crimes Code provides: "This Act shall take effect January 1, 1972, or six months from the date of final enactment, whichever is later." The Crimes Code was submitted with the expectation that it would become effective on January 1, 1972. At that time, Sections 72 and 94 of the Statutory Construction Act were still in force. However, by the time the Crimes Code actually became effective, June 6, 1973, Sections 72 and 94 had been repealed and §1952 had been enacted.

The question then becomes whether a court, as a matter of interpretation, can correct this error. Because we conclude, for other reasons, that neither Section 4 nor §1952 apply in this case, we do not reach this difficult question.

Assembly, in the future, "incorporates and repeals" the present provisions of the Crimes Code. This, of course, would mean that Section 4 has no present purpose, and that it may never have a purpose.

On the other hand, if Section 4 is interpreted as applying to the provisions of former Title 18, *as incorporated into and repealed by the Crimes Code*, then Section 4 has a present purpose. It is clear, however, from the language of Section 4, that it cannot apply unless there is a provision of the Crimes Code to which it *can* apply.

We agree with the Commonwealth, then, that because there is no provision in the Crimes Code corresponding to §5109, Section 4 does not apply. The crucial point to note, however, is that, in order to be effective, Section 4 assumes that §1952 will apply, if at all, only where prior statutes have corresponding provisions in the Crimes Code. Thus, the purpose behind the inclusion of Section 4 confirms our belief that §1952 was intended to apply where a new code contains provisions corresponding to an old statute, and, that §1952 does not operate to save §5109.

Finally, we note that the Crimes Code, as originally proposed, contained an alternative sentencing provision. Act of Dec. 6, 1972, P.L. 1482, No. 334, ch. 13. However, that section was not enacted until passage of the Act of Dec. 30, 1974, P.L. 1052, No. 345, §1 (18 Pa.C.S. §1321) (Supp. 1975-76). Thus, we can only conclude that, at the time of enactment of the Crimes Code, the legislature had not passed upon the wisdom of the alternative sentencing provisions, and that they did not intend courts to have power to employ them.

Section 5 of the Crimes Code repealed §5109. The judgment of the lower court is reversed and the case is remanded for the imposition of a legal sentence.

JACOBS, J., dissents.