397 A.2d 1179

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Achelohiym WALTON.**

Supreme Court of Pennsylvania.

Jan. 24, 1979.

Edward G. Rendell, Dist. Atty., Steven H. Goldblatt, Deputy Dist. Atty. for Law, Paul S. Diamond, Asst. Dist. Atty., Philadelphia, for appellant.

Charles C. Coyne, Philadelphia, for appellee.

Howard S. Yares, Deborah E. Glass, Philadelphia, for amicus curiae, Victim Counseling Service, Philadelphia Bar Assoc.

Before EAGEN, C. J., and ROBERTS, NIX and LARSEN, JJ.

## OPINION OF THE COURT

EAGEN, Chief Justice.

Achelohiym Walton was convicted by a judge sitting without a jury of aggravated assault, recklessly endangering another person, and two weapons offenses. The charges arose out of an incident during the early morning hours of July 1, 1974, when Walton, armed with a shotgun, arrived at the apartment of Marlene, his former common-law wife and the mother of at least two children by Walton, and fired a blast from the shotgun into the face of Mancey Hamms, with whom Marlene was then living.[1] As a result of this attack, Hamms lost the sight of both eyes.

On February 19, 1975, a sentencing hearing was held. The judge noted the heinous nature of Walton's act but observed that he previously had no serious criminal record. She stated that, rather than sentencing him to prison,

"I would prefer to have him do something to make some slight atonement for society for the terrible wrong that he has done. The only thing I can think of having him do is to work and make some payment to Mr. Hamms other than sitting in jail and being an expense to the public."

Accordingly, after ascertaining Walton's earning potential based on his record of previous employment and requesting and receiving the comments of counsel, she sentenced Walton to probation for nineteen years[2] on the condition that he pay Hamms in restitution $25.00 per week during the entire probationary period. In imposing sentence, she relied upon the Act of June 24, 1939, P.L. 872, § 1109, as added and

1. Hamms and Marlene were later married.

2. The total of nineteen years was obtained by consecutively aggregating the maximum terms for the offenses of which Walton was convicted.

amended, 18 P.S. § 5109.[3] Neither Walton nor his counsel objected in the trial court to the propriety of the restitution order in general or complained of its specific terms.[4]

Subsequently, however, Walton appealed to the Superior Court and, inter alia, challenged the authority of the trial court to order restitution; the Superior Court remanded for resentencing. In doing so, it relied upon its previous decision in *Commonwealth v. Flashburg*, 237 Pa.Super. 424, 352 A.2d 185 (1975), in which it had held that section 1109 of the 1939 Penal Code had been repealed by the new Crimes Code and that between June 6, 1973, the effective date of the new Code, and March 30, 1975, the date the Code specifically authorized restitution,[5] Pennsylvania courts lacked the authority to order restitution as a condition of probation. *Commonwealth v. Walton*, 245 Pa.Super. 169, 369 A.2d 347

3. The section in pertinent part provided:
 "(b) Restitution Authorized.—
 (1) Upon conviction for any crime wherein property has been stolen, converted, or otherwise unlawfully obtained; or, its value substantially decreased as a direct result of the crime; or, wherein the victim suffered personal injury directly resulting from the crime, the offender may be sentenced, by a judge of the court of common pleas, in addition to the punishment prescribed therefor, to make restitution.
 \* \* \* \* \* \*
 (2) Whenever restitution has been ordered pursuant to clause (1) of this subsection and the offender has been placed on probation or parole, his compliance with such order may be made a condition of such probation or parole.
 (3) In determining whether to order restitution as a part of the sentence or as a condition of probation or parole, the judge . .

 (i) shall consider the financial means of the offender; the extent of injury suffered by the victim; and such other matters of record as he deems appropriate;
 (ii) may order restitution in a lump sum, by monthly installments, or according to such other schedule as he deems just, provided that the period of time during which the offender is ordered to make restitution shall not exceed the maximum term of imprisonment to which the offender could have been sentenced for the crime of which he was convicted . . . ."

4. Indeed, Walton's counsel stated that the judge's proposed disposition was the most equitable solution.

5. See 18 Pa.C.S.A. §§ 1321 and 1354 (Supp.1978–79).

(1976). We granted the Commonwealth's petition for allowance of appeal to determine whether or not the courts did possess this authority.[6]

We agree with the Superior Court's conclusion, elaborated in detail in *Flashburg*, that in enacting the Crimes Code the legislature repealed section 1109 of the 1939 Penal Code (18 P.S. § 5109); we must also therefore agree that the trial judge in the instant case was incorrect in relying upon the repealed section as authority for her order of restitution. Section 5 of the Act of December 6, 1972, repealed "absolutely" the 1939 Penal Code with the specific exceptions of only sections 718 and 719.[7] The Commonwealth, however, argues that, because, during the same 1972 session that it enacted the Code, the legislature also amended section 1109, that section continued in force despite the language of the repealer. In support of this position, the Commonwealth relies upon the following provision of the Statutory Construction Act:

"Whenever any existing statute, *incorporated into* and repealed by a code, is also amended by other legislation enacted at the same General Assembly, such separate amendment shall be construed to be in force, notwithstanding the repeal by the code of the statute such other legislation amends, and such amendment shall be construed to prevail over the *corresponding provisions of the code.*" (Emphasis added). 1 Pa.C.S.A. § 1952 (Supp.1978–79).

By its very terms, however, this provision requires that the repealed statute be incorporated into the new code. Here the Crimes Code contained no provision corresponding to the repealed statute; rather, Title 13, which was to cover sen-

6. The Victim Counseling Service of the Philadelphia Bar Association has filed an amicus curiae brief in support of the Commonwealth.

7. Section 2 of the 1972 Act did preserve prior law with respect to offenses committed prior to the effective date of the Crimes Code. The offenses of which Walton was found guilty, however, were committed after the effective date of the Code.

594

tencing authority, was merely reserved by the 1972 Act.[8] Thus, since the legislature in 1972 unequivocally repealed section 1109 without enacting its counterpart in the new Code, we will not speculate further about its intentions in doing so; rather, we must conclude that the repealed section provided no legal basis for the order here at issue.[9]

■ The Commonwealth, however, contends that, even if section 1109 was repealed by the Crimes Code, the judge nevertheless had the authority to enter the order she did pursuant to the Act of June 19, 1911, P.L. 1055, § 1, as amended, 19 P.S. § 1051. This Act provides as follows:

"Whenever any person shall be convicted in any court of this Commonwealth of any crime, except murder, administering poison, kidnapping, incest, sodomy, buggery, rape, assault and battery with intent to ravish, arson, robbery, or burglary, and it does not appear to the said court that the defendant has ever before been imprisoned for crime, either in this State or elsewhere (but detention in an institution for juvenile delinquents shall not be considered imprisonment), and where the said court believes that the character of the defendant and the circumstances of the

8. Indeed, the counterpart to the repealed statute, 18 Pa.C.S.A. § 1106, was not added until June 18, 1976, and then not as part of Title 13. We thus need not decide whether the entire section 1109, as amended in 1972, constituted a separate amendment, even though the actual substantive changes merely conferred power on district justices to order restitution. See Act of September 22, 1972, P.L. 876, No. 200, § 1.

An additional obstacle to the Commonwealth's argument, which we need not here examine further, is that section 4 of the Code provides that section 72 of the Statutory Construction Act, the identical predecessor to 1 Pa.C.S.A. § 1952, shall, with an exception not here pertinent, not be applicable to the Code. See *Commonwealth v. Flashburg*, supra.

9. Compare 1 Pa.C.S.A. § 1921(b) (Supp.1978–79) ("When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit"). We note, however, that the view that the repealed section remained in force was apparently widespread. See, e. g., S. Toll, Pennsylvania Crimes Code Annotated, 297. We are informed by the Commonwealth that in Philadelphia alone more than 350 cases involving orders of restitution have been affected by the Superior Court's decision in *Flashburg*.

case such that he or she is not likely again to engage in an offensive course of conduct, and that the public good does not demand or require that the defendant should suffer the penalty imposed by law, the said court shall have power to suspend the imposing of the sentence, and place the defendant on probation for a definite period, *on such terms and conditions,* including the payment of money for the use of the county, not exceeding, however, the fine fixed by law for conviction of such offense, *as it may deem right and proper*; said terms and conditions to be duly entered of record as a part of the judgment of the court in such case. No such condition for the payment of money shall be considered as the imposition of a fine or a sentence nor prevent the court from thereafter sentencing any defendant under the act under which he or she was convicted, upon violation of his or her parole." (Emphasis added).

The Commonwealth maintains that the "terms and conditions" language of the 1911 Act governing probation was sufficient to confer upon the trial judge in the instant case the discretion she exercised in requiring that restitution [10] be paid to Walton's victim as a condition of his probation.[11] With this contention we agree.

10. We recognize that the term "restitution" ordinarily refers to compensation required for the wrongful appropriation of money or property, and that "reparation" is the term generally used to refer to compensation required to be paid to a victim who has suffered physical injury as a result of the crime. Both the repealed section 1109 of the 1939 Penal Code and 18 Pa.C.S.A. § 1106, its eventual successor in the Crimes Code, however, use "restitution" to cover both sorts of compensation. Compare 18 Pa.C.S.A. § 1354(c)(8) (Supp.1978–79) (restitution or reparations).

11. It is immaterial for purposes of this argument that the trial judge instantly did not suspend sentence, as authorized by the 1911 Act, but simply placed Walton on probation for a definite period in lieu of sentence, as authorized by the Act of August 6, 1941, P.L. 861, § 25, 61 P.S. § 331.25, which contains no "terms and conditions" language. As we determined in *Commonwealth v. Kates,* 452 Pa. 102, 305 A.2d 701 (1973), since the 1941 Act was primarily concerned with the establishment of the Pennsylvania Board of Parole, it was not intended to be a complete codification of judicial powers with respect to probation; rather, to the extent possible, the 1941 and 1911 acts, as

■ Before reaching the merits of this argument, however, we must consider Walton's suggestion that the Commonwealth's failure to present the argument to the Superior Court may "estop" it from raising it here. The Superior Court, of course, might have affirmed the order of the trial court if it was correct for any reason. See, e. g., *Commonwealth v. O'Donnell*, 472 Pa. 25, 370 A.2d 1209 (1977); *Commonwealth v. Hines*, 461 Pa. 271, 336 A.2d 280 (1975). Nevertheless, it was not incumbent upon the Commonwealth as appellee in the Superior Court to anticipate every possible reason why the trial court's order should be affirmed. See *Sherwood v. Elgart*, 383 Pa. 110, 117 A.2d 899 (1955) (appellees not precluded from raising argument in support of affirmance for the first time at reargument).

More significantly, the Superior Court, both in *Flashburg* and the instant case, did more than decide that section 1109 of the 1939 Penal Code had been repealed and provided no authority for the restitutionary conditions imposed; it held that restitution could not be required as a condition of probation absent a statutory provision specifically authorizing restitution. Since Walton raised no objections in the trial court, his only basis for appellate attack on the order of probation was the jurisdictional ground that it lacked legal authority. Compare *Commonwealth v. Walker*, 468 Pa. 323, 362 A.2d 227 (1976) (illegal sentence held void despite failure to object at the time it was imposed), with *Commonwealth v. Walls*, 481 Pa. 1, 391 A.2d 1064 (1978) (appellate attack on legal sentence held waived because of failure to raise objection in trial court). In order to make a proper determination of the legality of the order challenged instantly, both justice and fairness require that we consider the Commonwealth's belated arguments in support of the legal authority for the trial court's order as well as Walton's belated arguments in opposition to it.

well as the Act of May 10, 1909, P.L. 495, § 1, 19 P.S. § 1081, the language of which is carried over into the 1911 Act, must be read *in pari materia*. In *Commonwealth v. Holm*, 233 Pa.Super. 281, 335 A.2d 713 (1975), the Superior Court expressly held that the 1911 Act provided the authority for a restitutionary condition though probation was imposed pursuant to the 1941 Act.

Turning therefore to the merits of the Commonwealth's argument, we observe that the Superior Court, holding in *Flashburg* that restitution must be specifically authorized by statute in order to be made a condition of probation, relied upon its previous decisions in *Commonwealth v. Jackson*, 218 Pa.Super. 357, 280 A.2d 422 (1971); *Commonwealth v. Gross*, 161 Pa.Super. 613, 56 A.2d 303 (1948); *Commonwealth v. Rouchie*, 135 Pa.Super. 594, 7 A.2d 102 (1939); and *Commonwealth v. Boyle*, 108 Pa.Super. 598, 165 A. 521 (1933). *Jackson*, supra, did involve a restitutionary condition made part of an order of probation; the court there held that such a condition was void because the offense, assault and battery, occurred before the 1970 amendments to section 1109 of the 1939 Penal Code specifically authorized restitution in such a case. In the other cases cited in *Flashburg*, however, probation was not involved at all, and the court merely held that the applicable statute did not authorize a sentence of restitution *in addition to* the punishment imposed. Moreover, the Superior Court in *Jackson* merely cited in support of its holding *Rouchie*, supra, in which restitution was ordered in addition to the statutory punishment, and the statute defining the extent of the punishment for aggravated assault and battery. Thus, it appears that the Superior Court in both *Flashburg* and *Jackson* failed to distinguish restitution as a condition of probation ordered in lieu of the statutory punishment from restitution required in addition to the statutory punishment.

Furthermore, the Superior Court, in failing to make this distinction, also failed to observe that its approach in *Flashburg* and *Jackson* was inconsistent with its own previous decisions in this regard. See *Commonwealth v. Bushkoff*, 177 Pa.Super. 231, 110 A.2d 834 (1955); *Commonwealth v. Peterson*, 172 Pa.Super. 341, 94 A.2d 582 (1953). As recently as *Commonwealth v. Holm*, 233 Pa.Super. 281, 335 A.2d 713 (1975), though with respect to an offense punishable under the 1939 Penal Code, the court held that the "terms and conditions" language of the 1911 Act authorized for the trial

court to order restitution as a condition of probation; the court made no reference to section 1109 of the 1939 Code.[12]

Although we have indicated that an order placing a defendant on probation must be regarded as punishment for double-jeopardy purposes,[13] there is, in our view, a signif-icant distinction between restitution required in addition to a statutory punishment, such as imprisonment, and restitution required in lieu of such punishment.[14] While such an order must be strictly scrutinized in conjunction with a primarily punitive sentence, conditions of probation, though significant restrictions on the offender's freedom, are primarily aimed at effecting, as a constructive alternative to imprisonment, his rehabilitation and reintegration into society as a law-abiding citizen;[15] courts therefore are traditionally and properly invested with a broader measure of discretion in fashioning conditions of probation appropriate to the circumstances of the individual case. See ABA Standards, Probation, § 3.2 (Approved Draft, 1970). Thus, 18 Pa.C.S.A. § 1354 (Supp.1978–79), enacted prior to Walton's sentencing but not effective until after it, provides in subsection (b) that "(t)he court shall attach such of the reasonable conditions authorized by subsection (c) of this section as it deems necessary to insure or assist the defendant in leading a law-abiding life"; subsection (c) lists twelve specific conditions that might appropriately be imposed including restitution or reparations, but § 1354(c)(13) significantly invests the

12. *Commonwealth v. Ferguson*, 201 Pa.Super. 649, 193 A.2d 657 (1963) epitomizes the Superior Court's inconsistency in this regard; it contains language that can support either approach and makes no attempt to resolve the inconsistency.

13. *Commonwealth v. Vivian*, 426 Pa. 192, 200, 231 A.2d 301, 305 (1967).

14. *Huntzinger v. Commonwealth*, 97 Pa. 336 (1881), the only decision by this Court we have discovered concerned with a court's power to order restitution in a criminal case, is not to the contrary.

15. From the viewpoint of the offender, of course, there is a further significant distinction. In exchange for his acceptance of the probationary condition, he is permitted to avoid imprisonment and obtain his freedom, though in a somewhat restricted form.

court with additional discretion: "To satisfy any other con-
ditions reasonably related to the rehabilitation of the de-
fendant and not unduly restrictive of his liberty or incompa-
tible with his freedom of conscience."

Although the 1911 Act (19 P.S. § 1051) merely authorizes
the court to impose such probationary terms and conditions
"as it may deem right and proper" without specifically
authorizing restitution as such a condition, we are unable to
conclude from this any intent to exclude restitution as a
possible condition in the appropriate case. Rather, particu-
larly since no specific conditions were expressly authorized
by the Act, it appears that the discretion conferred upon
courts to fashion appropriate conditions of probation was a
broad one. The practice of ordering restitution or repara-
tion as such a condition is widely established and highly
favored in the law, as an aid both to the criminal in
achieving rehabilitation and to his victim in obtaining some
measure of redress. See ABA Standards, Probation,
§ 3.2(c)(viii) (Approved Draft, 1970); Annotation, Propriety
of Condition of Probation which Requires Defendant Con-
victed of Crime of Violence to Make Reparation to Injured
Victim, 79 A.L.R.3d 976 (1977), and cases cited therein.
Although modern probation statutes customarily contain
specific authorizations for this practice, broad discretionary
statutes such as 19 P.S. § 1051 have generally been held
sufficient to permit courts to enter such orders in appropri-
ate cases. See, e. g., *Basile v. United States*, 38 A.2d 620
(D.C.Mun.App.1944) (failure of Congress specifically to au-
thorize restitution does not indicate a lack of power in the
court to impose such a condition).

■ We are not persuaded that the repeal of section 1109
of the 1939 Code in the uncertain circumstances referred to
previously in this opinion reflected any legislative desire to
forbid restitution in the appropriate probationary case, par-
ticularly since by the time Walton was sentenced the legisla-
ture had already adopted 18 Pa.C.S.A. § 1354, which includ-

ed restitution as a possible probationary condition.[16] Thus, although the court's broad discretion to order restitution pursuant to the 1911 Act was not unlimited,[17] we must conclude it had the legal authority to enter such an order.

 Walton argues that the amount that the judge ordered him to pay was an arbitrary one, and that to construe the 1911 Act to permit restitution in an arbitrary amount is to make it overbroad and in violation of due process. As noted previously, however, Walton at his sentencing hearing failed to object to the amount of the order or the appropriateness of the procedure used to ascertain it, although he had an opportunity to do so. Thus, in our view, he has waived these issues. See *Commonwealth v. Walls*, supra; *Commonwealth v. Walker*, supra. The order was within the authority of the statute and cannot in itself be said to render the statute unconstitutional.

Accordingly, the order of the Superior Court is reversed, and the order of the trial court is reinstated.

Mr. Justice MANDERINO did not participate in the consideration or decision of this case.

**16.** We observe that the repealed section 1109 was only secondarily concerned with restitution as a condition of probation. Its primary purpose was to authorize restitution in addition to the statutory punishment for the offense. Compare 18 P.S. § 5109(b)(1) with 18 P.S. § 5109(b)(2). The previous restitution statute, the Act of March 31, 1860, P.L. 382, § 179, 19 P.S. § 981, which was repealed by the 1939 Code, was not concerned with probation at all. It is interesting to note in this connection that on March 30, 1975, the date when, in the view of the Superior Court, the Crimes Code permitted restitution as a condition of probation for the first time, the source of specific authority was 18 Pa.C.S.A. § 1354, the successor to 19 P.S. § 1051. As noted previously, the successor to 18 P.S. § 5109, 18 Pa.C.S.A. § 1106, was not enacted until 1976. See n. 8, supra.

**17.** It is well recognized that such a condition should not be harshly punitive, but should take into account both the extent of the victim's loss or harm and the defendant's ability to pay. See generally Annotation, Ability to Pay as Necessary Consideration in Conditioning Probation or Suspended Sentence upon Reparation or Restitution, 73 A.L.R.3d 1240 (1976), and cases cited therein; Best and Birzon, Conditions of Probation: An Analysis, 51 Geo.L.Rev. 809 (1963). Compare 18 Pa.C.S.A. § 1354(c)(8) (Supp.1977–78).

O'BRIEN, J., and POMEROY, former J., did not participate in the decision of this case.

ROBERTS, J., filed a concurring opinion.

LARSEN, J., joins in this opinion and filed a concurring opinion.

ROBERTS, Justice, concurring.

I join in the Opinion of the Court insofar as it holds that the Act of June 19, 1911, P.L. 1055, § 1, as amended, 19 P.S. § 1051, authorizes the trial court's order of restitution as a condition of probation. But I do not subscribe to the majority's view that appellant has waived his contention that the amount of restitution so ordered is arbitrary. Because the issue has been preserved, I would reach the merits and conclude that the contention is without merit.

LARSEN, Justice, concurring.

I join in the majority opinion. I would like to point out that this defendant is the type of individual who, because of his behavior (intentionally discharging a shotgun in the face of the victim), should have received a long jail term. But, instead, he got a "break" from a misguided trial judge who probably meant well but obviously misjudged the defendant. He is, now, in this appeal trying to worm his way out of paying the restitution. Now that we have affirmed the trial judge's imposition of a condition ($25.00 per week) of probation, I strongly urge the lower court to monitor this case and if the defendant fails to meet *any* condition of probation, then his probation should be revoked and a long jail term imposed.

Meantime, the victim and witnesses to the crime have to concern themselves with what this violent criminal may do in the future. Trial judges should realize that jails serve a function of putting a criminal in a position of not being able to do violence to the free citizens of this Commonwealth. As to the trial judge's attempted "rehabilitation" and "slight atonement" . . . nonobtained ideal . . . I will opt for the citizen's safety.