670 A.2d 1124

**COMMONWEALTH of Pennsylvania, Appellee**

v.

**William Robert BIRDSEYE and William Richard Birdseye, Appellants.**

Supreme Court of Pennsylvania.

Argued Sept. 18, 1995.

Decided Jan. 18, 1996.

252

Thomas A. Crawford, Jr., Pittsburgh, for William Robert and William Richard Birdseye.

Robert E. Colville, Kemal A. Mericli, and Thomas N. Farrell, Pittsburgh, for the Commonwealth.

Before NIX, C.J., and FLAHERTY, ZAPPALA, CAPPY, CASTILLE and MONTEMURO, JJ.

## *OPINION*

ZAPPALA, Justice.

The Appellants were found to have violated 18 Pa.C.S. §§ 911(b)(3) (Corrupt Organizations), 5902(b)(7) (Promoting Prostitution), 5903(a)(2) (Obscene Materials), 5703(1) (Interception of Wire Communications), and 5705(1) (Possession of Intercepting Devices). The sole issue in this appeal is whether the Appellants' communications were intercepted in violation of 18 U.S.C. § 2516(2), such that the evidence gathered from the wiretaps should have been suppressed.

The wiretaps at issue here were authorized by a judge of the Superior Court in April of 1986 pursuant to the Wiretapping and Electronic Surveillance Control Act, 18 Pa.C.S. § 5701 et seq. The affidavits supporting the request described an investigation of prostitution and related offenses, corrupt organizations, and conspiracy. In seeking suppression, the Appellants argued that because there was no showing that the crimes under investigation were "dangerous to life, limb, or property," they were outside the types of crimes that

the Federal Wire Interception Act (Federal Act) granted states the authority to investigate by means of wiretaps.

The Federal Act controls the use of wiretaps by federal agencies and also imposes restrictions on their use by the states. Appropriate state officers are authorized to employ wiretaps

> when such interception may provide or has provided evidence of the commission of the offense of murder, kidnapping, gambling, robbery, bribery, extortion, or dealing in narcotic drugs, marijuana or other dangerous drugs, *or other crime dangerous to life, limb, or property,* and punishable by imprisonment for more than one year, *designated in any applicable state statute* authorizing such interception, or any conspiracy to commit any of the foregoing offenses.

18 U.S.C. § 2516(2) (emphasis added).

The Wiretapping and Electronic Surveillance Control Act (Pennsylvania Act) is the "applicable state statute" authorizing interceptions in Pennsylvania. During the period relevant to this case, that statute provided that prosecutors could

> make written application to any Superior Court Judge for an order authorizing the interception of a wire or oral communication by the investigative or law enforcement officers or agency having responsibility for an investigation involving suspected criminal activities when such interception may provide evidence of the commission of any of the following offenses . . .
>
> (2) Under this title, where such offense is dangerous to life, limb or property and punishable by imprisonment for more than one year
>
> . . .
>
> Section 5902 (relating to prostitution and related offenses)
>
> .    .    .    .    .
>
> (5) Any offense set forth under the Act of November 15, 1972 (P.L. 1227, No. 272).

(6) Any conspiracy to commit any of the offenses set forth in this section.

18 Pa.C.S. § 5708(a), as amended December 2, 1983.

■ By virtue of the Supremacy Clause of the United States Constitution, Article VI, Section 2, the Federal Act preempts the ability of the states to adopt legislation that would be less restrictive in allowing interceptions. See *Commonwealth v. Doty*, 345 Pa.Super. 374, 498 A.2d 870 (1985), cert. denied, 479 U.S. 853, 107 S.Ct. 185, 93 L.Ed.2d 119.

■ The common pleas court ruled that authorization for the interceptions would not have been valid had the charges under investigation been limited to the crimes of simple prostitution or corrupt organizations for the purpose of selling pornographic materials. The court reasoned that these crimes would not constitute dangerous crimes and thus would be beyond the scope of wiretap investigation permitted by the Federal Act. The court concluded that the interceptions were properly authorized, however, because the investigation extended to the crime of corrupt organizations for the promotion of prostitution. Taking judicial notice of the existence of "a health crisis brought on by a sexually transmitted virus which causes the fatal disease known as AIDS," the court determined that in such circumstances the promoting of anonymous sexual intercourse for profit represented a danger to life. The court emphasized the vast scale of the enterprise under investigation in distinguishing fornication, adultery, and individual acts of prostitution, which might involve the same type of health risk but would not be subject to investigation by wiretapping.

The Appellants argue that the court erred in supplying the element of "danger to life, limb, or property" by the device of judicial notice. They also argue that the affidavits supporting the wiretap applications contained no evidence from which such danger could be found. Accordingly, the investigation did not meet the requirements of the Federal Act for the type of investigation in which interception of communications could be authorized.

The Commonwealth counters each of these arguments, but offers a more fundamental argument as to why the authorization was valid under the Pennsylvania Act and within the scope allowed by the Federal Act.

Section 5708(a)(5) of Title 18 of the Pennsylvania Consolidated Statutes designates "[a]ny offense set forth under the Act of November 15, 1972 (P.L. 1227, No. 272)" as a type of criminal activity that may be investigated by means of interception of communications. This Act amended Pennsylvania's first Corrupt Organizations statute, the Act of December 8, 1970 (P.L. 874, No. 276, §§ 1 to 9). When the Crimes Code was enacted pursuant to the plan to codify all of the statutory law of the Commonwealth, the Corrupt Organizations statute was repealed and reenacted without substantial change, Act of December 6, 1972 (P.L. 1482, No. 334, § 1), effective June 6, 1973, and now appears at 18 Pa.C.S. § 911.

The rules of statutory construction provide that "[w]henever a statute is repealed and its provisions are at the same time reenacted in the same or substantially the same terms by the repealing statute, the earlier statute shall be construed as continued in active operation." 1 Pa.C.S. § 1962. Therefore, notwithstanding the repeal, it is appropriate to construe the reference to Act 272 of 1972 in 18 Pa.C.S. § 5708(a)(5) as being a reference to the Corrupt Organizations statute now found at 18 Pa.C.S. § 911.[1] The result is that the Pennsylva-

1. We note that the General Assembly has also provided as a rule of statutory construction that

Whenever any existing statute, incorporated into and repealed by a code, is also amended by other legislation enacted by the same General Assembly, such separate amendment shall be construed to be in force, notwithstanding the repeal by the code of the statute such other legislation amends, and such amendment shall be construed to prevail over the corresponding provisions of the code.

1 Pa.C.S. § 1952. Because the original Corrupt Organizations statute was amended by Act 272 of 1972, and the same General Assembly also repealed that statute and enacted the Crimes Code, this rule would suggest that the amendment contained in Act 272 of 1972 would be in force, prevailing over the corresponding provisions of the Crimes Code in 18 Pa.C.S. § 911.

However, Section 4 of the act by which prior criminal statutes were repealed and the Crimes Code was adopted, Act of December 6, 1972,

nia Act authorizes prosecutors. to make application for interception of communications to investigate criminal activity as defined in the Corrupt Organizations statute. Unlike subsection (a)(2), however, subsection (a)(5) contains no prefatory language limiting its application to circumstances "where such offense is dangerous to life, limb or property." Consequently, where, as here, interceptions are sought to provide evidence of the commission of an offense set forth under the Corrupt Organizations statute, there need not be a separate showing of dangerousness for the authorization to be valid under the

P.L. 1482, No. 334, expressly provided that this rule of construction "shall not be applicable to any provision of Title 18 of the Consolidated Pennsylvania Statutes (relating to crimes and offenses) as added by this act, except Article G (relating to miscellaneous offenses) of Part II (relating to definition of specific offenses)." Thus even though the Corrupt Organizations statute was amended by the same General Assembly that repealed and incorporated it into a code, the amendment is not to be construed as prevailing over the corresponding provisions of the code.

In *Commonwealth v. Flashburg*, 237 Pa.Super. 424, 352 A.2d 185 (1975), Superior Court noted that Section 4, read literally, did not prohibit the application of 1 Pa.C.S. § 1952. Section 4 stated that "section[ ] 72 ... of the Statutory Construction Act shall not be applicable to any provision of Title 18...." Section 72 of the Statutory Construction Act was the predecessor to 1 Pa.C.S. § 1952. The Crimes Code legislation, including Section 4, was drafted at a time when Section 72 was still in force, presumably with the expectation that when it became effective Section 72 would still be in force. However, the Crimes Code did not become effective until June of 1973. In the interim, on December 6, 1972, Section 72 of the Statutory Construction Act had been repealed and replaced by 1 Pa.C.S. § 1952. However, Section 4 of the Crimes Code legislation was not revised to reflect this change and continued to refer to Section 72, which had been repealed.

Superior Court decided *Flashburg* on other grounds, and so did not reach the "difficult question" of "whether a court, as a matter of interpretation, can correct this error." 237 Pa.Super. at 431 n. 6, 352 A.2d at 188 n. 6. As with the principal statutes under consideration in the text, application of 1 Pa.C.S. § 1962 leads us to conclude that a reference to a statute which has been repealed and reenacted in substantially similar form should be construed as a reference to the reenacted statute.

Finally, we note that the General Assembly removed any doubt as to its intention by amending the Wiretapping and Electronic Surveillance Control Act in 1988 to include section 911 (relating to corrupt organizations in subsection (1) of section 5708(a), i.e., the subsection, listing offenses that may be investigated by means of wiretaps, which does not contain the prefatory language "where such offense is dangerous to life, limb or property."

258 ·

Pennsylvania Act.[2]

■ This leaves the question whether the interceptions in question were nevertheless beyond the scope of the Federal Act. The Appellants maintain that because "corrupt organizations" is not among the crimes specifically enumerated in the Federal Act, prosecutors seeking wiretap authorization to investigate corrupt organizations violations must make a separate showing that the underlying activities which make up the "pattern of racketeering activity" are "dangerous to life, limb, or property." The common pleas court accepted this argument when it ruled that "the operation of a Corrupt Organization for the purpose of selling pornography is not a crime dangerous to life and that, to the extent that the Pennsylvania Corrupt Organization statute [sic] authorizes wiretaps for the purpose of uncovering evidence of a corrupt organization promoting the sale of pornography, it exceeds the permissible scope of the wiretap legislation permitted by Congress, 18 U.S.C. § 2516(2)." We disagree.

The legislative history of the Federal Act, found in Senate Report No. 1097, 90th Cong.2d Sess., U.S.Code Cong. and Admin.News 1968, pp. 2187–2188, provides the following insight:

All other crimes designated in the state statute would have to be dangerous to life, limb, or property, and punishable by imprisonment for more than one year. This limitation is intended to exclude such offenses as fornication and adultery, which do not involve danger to life, limb, or property. *The term property, however, is not to be read restrictively. For example, the activities of organized crime in cigarette bootlegging which poses a substantial threat to the revenue*

2. The analysis assumes that, as with any of the other elements of the application for authorization, the assertion of an investigation of corrupt organizations violations is bona fide and not merely a ruse to investigate by wiretaps a crime not included in the Act. The Superior Court judge to whom the application is presented must make this assessment in deciding whether to authorize the interceptions or not. In the present case, there is no question that the application described a legitimate investigation of the Appellants for violations of the corrupt organizations statute, as they were ultimately convicted thereunder.

*of some cities and states, could be made a designated offense if the penalty were high enough.*

(Emphasis added.)

Pennsylvania's Corrupt Organizations statute begins by setting forth findings of fact on which the General Assembly's enactment of it was based. 18 Pa.C.S. § 911(a). Among those findings are that organized crime "annually drains billions of dollars from the national economy," "exists on a large scale within the Commonwealth ... engaging in the same patterns of unlawful conduct which characterize its activities nationally," infiltrates legitimate business with techniques of "violence, intimidation, and other forms of unlawful conduct," and thereby constitutes "a substantial danger to the economic and general welfare of the Commonwealth of Pennsylvania."[3] The harms identified in these findings are unmistakably similar to the type of harm used as an example in the Senate Report quoted above. On this basis, we conclude that the common pleas court read the Federal Act too narrowly in

---

3. The findings state in full that

(1) organized crime is a highly sophisticated, diversified, and widespread phenomenon which annually drains billions of dollars from the national economy by various patterns of unlawful conduct including the illegal use of force, fraud and corruption;

(2) organized crime exists on a large scale within the Commonwealth of Pennsylvania, engaging in the same patterns of unlawful conduct which characterize its activities nationally;

(3) the vast amounts of money and power accumulated by organized crime are increasingly used to infiltrate and corrupt legitimate businesses operating within the Commonwealth, together with all of the techniques of violence, intimidation, and other forms of unlawful conduct through which such money and power are derived;

(4) in furtherance of such infiltration and corruption, organized crime utilizes and applies to its unlawful purposes laws of the Commonwealth of Pennsylvania conferring and relating to the privilege of engaging in various types of business and designed to insure that such businesses are conducted in furtherance of the public interest and general economic welfare of the Commonwealth;

(5) such infiltration and corruption provide an outlet for illegally obtained capital, harm innocent investors, entrepreneurs, merchants and consumers, interfere with free competition, and thereby constitute a substantial danger to the economic and general welfare of the Commonwealth of Pennsylvania; and

(6) in order to successfully resist and eliminate this situation, it is necessary to provide new remedies and procedures.

ruling that an application to intercept communications in the investigation of a corrupt organization must include a separate showing of danger to life.[4]

This conclusion is bolstered by examination of the overall structure of the Federal Act. The first part of the section dealing with authorization for interceptions applies to the Attorney General and various deputies and assistants. It authorizes application to federal judges for approval of interceptions to obtain evidence of certain enumerated offenses. Significantly, the federal Racketeer Influenced and Corrupt Organizations statute is among them. See 18 U.S.C. § 2516(1)(c). Also among the enumerated crimes for which federal prosecutors may seek approval for interceptions is "any felony violation of chapter 71 (relating to obscenity) of this title." 18 U.S.C. § 2516(1)(i).

The next part of this section dealing with authorization for interceptions is analogous and applies to state prosecutors and state judges. Of necessity, given the enormous number of state laws that would be involved, the Congress could not in this section provide a similarly detailed enumeration with

4.  Our analysis leads to the same conclusion with respect to the decision in *United States v. Millstone Enterprises, Inc.*, 684 F.Supp. 867 (W.D.Pa. 1988), *rev'd on other grounds*, 864 F.2d 21 (3d Cir.1988), relied on by the appellants. That case was a proceeding for enforcement of an Internal Revenue Service summons served on six corporations. The summons was issued in connection with an investigation of William Robert Birdseye, the appellant at No. 57 W.D. Appeal Docket, 1994, who was the president of the six corporations. Birdseye and the corporations refused to respond to the summons, asserting that the investigation derived from illegal wiretaps, the same wiretaps involved in the appeals now before this Court. The District Court agreed that "the state crimes for which the wiretaps were approved to investigate are not offenses within the scope of section 2516(2) ... and any evidence derived therefrom should not be used in a proceeding before a government body." 684 F.Supp. at 870. Noting that the Pennsylvania Act included prostitution as an offense that could be investigated by wiretaps only where it is "dangerous to· life, limb or property," the court concluded that "an alleged corrupt organizations violation, where a non-violent prostitution related offense is the underlying 'racketeering activity,' may [not] be permitted to bootstrap prostitution-related conduct into the category of crimes dangerous to life or limb." *Id.* at 871. For the reasons stated in the text, we find this analysis of the Federal Act to be too narrow.

citation to specific statutes. Hence the generic reference to certain crimes and the catch-all "other crime dangerous to life, limb, or property, and punishable by imprisonment for more than one year."

Under the Appellants' interpretation of the Federal Act, state prosecutors seeking authorization for an interception would face a burden (to show dangerousness) that their federal counterparts, *investigating the same type of crime,* would not. We perceive no reason for adopting an interpretation that would produce such an anomalous result. We hold, therefore, that the Pennsylvania Act, in allowing wiretaps to investigate activities proscribed by the Corrupt Organizations statute, does not exceed the authority granted to the states by 18 U.S.C. § 2516(2).

For the foregoing reasons the order of the Superior Court affirming the judgments of sentence is affirmed.

MONTEMURO, J., who was sitting by designation, did not participate in the decision of this case.