809 A.2d 234

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Yuri SPANGLER, Appellee.**

Supreme Court of Pennsylvania.

Argued Jan. 31, 2001.

Decided July 17, 2002.

Reargument Denied Sept. 24, 2002.

Joseph W. Carroll, Anthony Sarcione, West Chester, for Commonwealth of Pennsylvania.

D. Michael Fisher, Mary Benefield Seiverling, Harrisburg, for Attorney General of Commonwealth of PA.

Lee Ruslander, West Chester, for Yuri Spangler.

Before: FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO and SAYLOR, JJ.

## OPINION

Justice SAYLOR.

The issue in this case concerns the propriety of suppressing evidence based upon the requirement in Section 5704(2)(ii) of

the Wiretapping and Electronic Surveillance Control Act, obligating a prosecutor to act as the custodian of certain recorded evidence.

Following his arrest for narcotics offenses, Emerson Johnson ("Johnson") identified Appellee, Yuri Spangler ("Spangler"), as an individual from whom he had purchased cocaine and agreed to cooperate with detectives from the West Chester Police Department by purchasing narcotics from Spangler while police recorded such efforts via electronic monitoring. Toward this end, the Chester County District Attorney's Office approved four separate periods of interception. Although no interceptions occurred during the initial period, January 15, 1998, through February 9, 1998, the police recorded a telephone conversation between Johnson and Spangler involving arrangements for a drug transaction on the first day of the next approved period (February 11 to March 2, 1998). Approximately one-half hour later police also recorded a conversation between Johnson and Spangler that occurred during the drug transaction. The tape recordings from these interceptions were delivered to the district attorney's office on February 24, 1998, and no additional surveillance occurred during this period. From March 12, 1998 through April 12, 1998, the police were again authorized to conduct surveillance and, again on the first day, recorded a conversation between Johnson and Spangler concerning the purchase of cocaine, delivering the recording to the district attorney's office on March 31, 1998. The final approved period for interception extended from May 26, 1998 through June 15, 1998. Three conversations were recorded on May 27, the first two concerning arrangements for a drug delivery, and the last involving the actual sale. The tape recordings of these interceptions were turned over to the district attorney's office on July 13, 1998.

Spangler was arrested and charged with narcotics offenses and criminal conspiracy arising from the transactions. Prior to trial, Spangler moved to suppress the contents of the intercepted communications, arguing, *inter alia,* that the Commonwealth failed to comply with the storage and custody

requirements of Section 5704(2)(ii) of the Wiretapping and Electronic Surveillance Control Act (the "Wiretap Act"),[1] 18 Pa.C.S. § 5704(2)(ii). In pertinent part, Section 5704(2)(ii) permits law enforcement officers to intercept wire, electronic, or oral communications without court authorization where one of the parties to the communication has given prior consent, the prosecutor has approved the interception, and provided that:

[T]he Attorney General, deputy attorney general, district attorney or assistant district attorney authorizing the interception shall be the custodian of recorded evidence obtained therefrom....

18 Pa.C.S. § 5704(2)(ii).

At the suppression hearing, the Commonwealth presented testimony from the assistant district attorney who approved the interceptions, Norman Pine. ADA Pine explained that, after an interception, the tape recording of the surveillance is brought to the district attorney or designated assistant district attorney and is then stored in the county detective's office in a secure cabinet.[2] In addition, ADA Pine testified that there was a "general understanding" that the tape recordings were to be turned over to the district attorney's office "as soon as practicable," with provisions allowing the police to bring the recording to his home, leave it with the first assistant district attorney, or deliver it to the designated detective within the county detective's office if ADA Pine was unavailable.

The Commonwealth also presented testimony from the lead detective, who maintained that, while he endeavors to immediately turn over tape recordings of electronic surveillance, some delay may result from scheduling conflicts that render the designated recipients unavailable. With respect to the recordings from May 12, 1998, the detective explained that he was on vacation and later at school, and that ADA Pine was unavail-

1. Act of Oct. 4, 1978, P.L. 831, No. 164, *amended by* Act of Oct. 21, 1988, P.L. 1000, No. 115; Act of Feb. 18, 1998, P.L. 102, No. 19.

2. The county detective's office is physically connected to the district attorney's office.

able,[3] resulting in a delay in turning over the tapes until July 13, 1998. The detective noted, however, that the tapes were kept in a safe at the West Chester Police Department until delivery was effected. Following the suppression hearing, the parties filed memoranda advancing their arguments with respect to the interceptions.

Relying upon the custodial obligation in Section 5704(2)(ii), the suppression court granted Spangler's motion as to all of the recordings.[4] While acknowledging that the Wiretap Act limited the suppression of evidence for non-constitutional violations to certain enumerated grounds, the court nonetheless referenced Section 5721 of the Wiretap Act, 18 Pa.C.S. § 5721, as imposing certain restrictions upon the custody of recorded interceptions. Although this section was superceded prior to the court's decision, see Act of Feb. 18, 1998, P.L. 102, No. 19, § 11,[5] its provisions permitted suppression where the interception was not "made in accordance with Section 5704." 18 Pa.C.S. § 5721(a)(3) (superseded). In this respect, the court explained that the Wiretap Act, including Section 5704(2)(ii)'s requirement that the prosecutor approving the interception act as custodian of the recorded evidence, is to be strictly construed. Emphasizing that the district attorney's own policy obligated police officers to forward recordings as soon as practicable, and that the West Chester Police Department was

3. ADA Pine was on paternity leave during a portion of this period.

4. Notably, Spangler limited his argument concerning custody and storage to the May 27, 1998 recordings, which had been delivered to the district attorney's office after the expiration of the approval period. Without specifically arguing waiver, the Commonwealth claims that the suppression court improperly excluded all of the recordings when Spangler had only raised the timeliness and custody issue as to one set of recordings. Spangler's pre-trial motion, however, raised the challenge to custody and storage generally, and, although his memorandum in support of his motion limited this argument to the May 27 recordings, the suppression court did not treat this omission as a waiver and proceeded to address the issue for all of the recordings. As Spangler is the appellee, and as this Court has the benefit of the suppression court's analysis, we will address the merits respecting each of the interceptions.

5. The current limitation provision is reposed in Section 5721.1 of the Wiretap Act, 18 Pa.C.S. § 5721.1, and became effective one week after the February 11, 1998, interceptions.

only six blocks from the district attorney's office, the court concluded that suppression was appropriate, since the failure to promptly deliver the tape recordings to the authorizing prosecutor violated the custody requirement of Section 5704.

On the Commonwealth's appeal, a divided panel of the Superior Court affirmed in a memorandum decision, with the majority's reasoning tracking that of the suppression court. The dissent noted that, in the circumstance of interceptions of communications where neither party consents, upon the expiration of the order authorizing the interception, the recordings are to be immediately transferred to the judge who issued the order and sealed under his direction. *See* 18 Pa.C.S. § 5714(b). In contrast, the dissent emphasized that the one-party consent provision in Section 5704(2)(ii), which designates the authorizing prosecutor as the custodian of the recorded evidence, does not contain a time frame for the transfer of the recordings. The dissent found the distinction to be intentional, as surveillance involving one-party consent does not generally implicate constitutional concerns and is not scrutinized as closely as non-consensual surveillance. The dissent thus declined to infer that the General Assembly intended to impose the same requirements on one-party consensual interceptions. Agreeing with the majority that a reasonableness standard should be imposed in the absence of legislative guidance, the dissent would have concluded that it was reasonable for the police to transfer the February 11 and March 12, 1998 recordings to the district attorney's office before the expiration of the respective authorization periods, but that it was unreasonable to deliver the May 27, 1998 recordings after such expiration. This Court allowed appeal to address the Wiretap Act's limitation upon remedies for non-constitutional violations in connection with the custodial requirement in Section 5704.

Pennsylvania's Wiretap Act is generally modeled after the federal analogue, 18 U.S.C. §§ 2510–2520. *See Commonwealth v. Blystone*, 519 Pa. 450, 464, 549 A.2d 81, 88 (1988).[6] The federal legislation authorizes states to adopt

6. The federal enactment was part of Title III of the Omnibus Crime Control and Safe Streets Act of 1968, Pub.L. No. 90–351, § 802, 82

coordinate statutes permitting the interception of wire, oral, or electronic communications, *see* 18 U.S.C. § 2516(2), and to grant greater, but not lesser, protection than that available under federal law. *See Commonwealth v. Birdseye*, 543 Pa. 251, 255, 670 A.2d 1124, 1126 (1996). Pennsylvania's the Wiretap Act emphasizes the protection of privacy, *see generally Commonwealth v. DeMarco*, 396 Pa.Super. 357, 371, 578 A.2d 942, 949 (1990), and, consistent with such emphasis, provides a statutory exclusionary rule that extends to non-constitutional violations. *See generally* Michael S. Lieb, *E–Mail and the Wiretap Laws: Why Congress Should Add Electronic Communication to Title III's Statutory Exclusionary Rule and Expressly Reject a "Good Faith" Exception*, 34 HARV. J. ON LEGIS. 393, 422 (1997) (noting that, by covering violations that are purely statutory, the federal wiretap act, and, correspondingly, state analogues, provide greater protection than the Fourth Amendment). Because of this privacy concern, the provisions of the Wiretap Act are strictly construed. *See Boettger v. Miklich*, 534 Pa. 581, 586, 633 A.2d 1146, 1148 (1993).

Prior to amendment, this exclusionary rule, which was originally codified in Section 5721, the section upon which the suppression court relied, provided as follows:

(a) **Motion to suppress.**—Any aggrieved person in any trial, hearing, or other adversary proceeding in or before any court or other authority of this Commonwealth may move to suppress the contents of any intercepted wire, electronic or oral communication, or evidence derived therefrom, on any of the following grounds:

(1) The communication was unlawfully intercepted.

(2) The order of authorization if required is insufficient on its face.

(3) The interception unless made in accordance with section 5704 (relating to exceptions to prohibition of interception and disclosure of communications) was not in conformity

Stat. 212 (1968), and was later substantially amended by the Electronic Communications Privacy Act of 1986, Pub.L. No. 99–508, § 111(b), 100 Stat. 1848 (1986).

with the order of authorization or in accordance with the requirements of section 5712 (relating to issuance of order and effect).

18 Pa.C.S. § 5721 (superceded). The statutory exclusionary rule was amended in 1998, after the initial interceptions occurred in this case, and now specifies that:

**(b) Motion to exclude.**—Any aggrieved person who is a party to any proceeding in any court, board or agency of this Commonwealth may move to exclude the contents of any wire, electronic or oral communication, or evidence derived therefrom, on any of the following grounds:

(1) Unless intercepted pursuant to an exception set forth in section 5704 (relating to exceptions to prohibition of interception and disclosure of communications), the interception was made without prior procurement of an order of authorization under section 5712 (relating to issuance of order and effect) or an order of approval under section 5713(a) (relating to emergency situations) or 5713.1(b) (relating to emergency hostage and barricade situations).

(2) The order of authorization issued under section 5712 or the order of approval issued under section 5713(a) or 5713.1(b) was not supported by probable cause with respect to the matters set forth in section 5710(a)(1) and (2) (relating to grounds for entry of order).

(3) The order of authorization issued under section 5712 is materially insufficient on its face.

(4) The interception materially deviated from the requirements of the order of authorization.

(5) With respect to interceptions pursuant to section 5704(2), the consent to the interception was coerced by the Commonwealth.

(6) Where required pursuant to section 5704(2)(iv), the interception was made without prior procurement of a court order, or without probable cause.

18 Pa.C.S. § 5721.1.[7]

■ Presently, the Commonwealth and *amicus curiae*, the Attorney General, maintain that the plain language of the applicable statutory exclusionary rule, 18 Pa.C.S. § 5721.1(b), does not include violation of the custody requirement for one-party consensual intercepts, 18 Pa.C.S. § 5704(2)(ii). Moreover, the Commonwealth asserts that, although Section 5704(2)(ii) designates the prosecutor who approved the interception as the custodian of the recordings, there is no requirement that he or she take physical possession at any specified time. Contrasting the explicit requirements respecting transfer and custody of recordings involving non-consensual interceptions, *see* 18 Pa.C.S. § 5714(b), the Commonwealth argues that the absence of such requirements in Section 5704(2)(ii) was a deliberate legislative decision, as one-party consent interceptions do not implicate constitutional concerns on the order of those which pertain to non-consensual interceptions. Spangler, on the other hand, cites to the custody requirement in Section 5704 and the policy of the district attorney's office fostering prompt transfer, arguing that the Wiretap Act requires suppression where, as here, the interception was not conducted pursuant to the requirements governing one-party consent. *See* 18 Pa.C.S. § 5721.1(b)(1). According to Spangler, exclusion is warranted under either version of the rule, as the interception was not accomplished in "accordance with" or "pursuant to" Section 5704, because the delay in transferring the tape recordings was in derogation of the custodial obligation of the district attorney who approved the intercep-

---

**7.** The amendments, *inter alia*, replaced the general exclusion for unlawful interception with more specific, far narrower exclusions.

In this case, the amendments merely modified the prefatory language of Section 5721(a)(3), the specific provision upon which Spangler and the suppression court relied, changing the phrase, "the interception unless made in accordance with section 5704," to "unless intercepted pursuant to an exception set forth in section 5704." This amendment did not alter the substance of the provision, and, thus, concerns over retroactive application are not pertinent. *See generally Morabito's Auto Sales v. Commonwealth, Dep't of Transp.*, 552 Pa. 291, 295–96, 715 A.2d 384, 386 (1998) (discussing the limitations upon statutory retroactivity).

tion, as well as the district attorney's own policy requiring that recordings be turned over as soon as practicable.[8]

The interceptions presently before the Court, however, were consented to by one of the parties and were therefore obtained pursuant to the exception in Section 5704(2)(ii). Although such provision requires the prosecutor authorizing the interception to serve as the custodian of the recorded evidence, it does not impose a time frame for transfer or further elaborate upon this obligation.[9] This omission, while in contrast to other statutory provisions that impose time constraints, *see, e.g.,* 18 Pa.C.S. § 5714(b) (requiring immediate transfer and sealing for non-consensual interceptions); 18 U.S.C. § 2518(8)(a) (same), is consistent with the different degrees of caution exercised depending upon the existence of consent. For non-consensual interceptions, the immediacy and sealing requirements are deemed necessary to protect privacy/confidentiality, prevent editing or alteration, and aid in establishing a chain of custody.[10] On the other hand, while concern with the integrity

**8.** Although Spangler's argument references privacy concerns as a basis for the custody requirement in Section 5704, he does not otherwise contend that the issue is one of constitutional dimension or invoke the exclusionary rule under either the Fourth Amendment to the United States Constitution or Article I, Section 8 of the Pennsylvania Constitution. Rather, Spangler relies upon the Wiretap Act's statutory exclusionary rule, which governs non-constitutional violations. *See* 18 Pa. C.S. § 5721.1. Moreover, as the pertinent interceptions were conducted with one party's consent, they do not implicate constitutional privacy considerations to the same extent as non-consensual interceptions. *See United States v. White,* 401 U.S. 745, 751–52, 91 S.Ct. 1122, 1126, 28 L.Ed.2d 453 (1971); *Blystone,* 519 Pa. at 464–65, 549 A.2d at 87. Parenthetically, this Court has recognized that constitutional privacy protections may attach to participant monitoring of face-to-face communications occurring within the speaker's home because of the special sanctity of the location. *See Commonwealth v. Brion,* 539 Pa. 256, 260, 652 A.2d 287, 289 (1994).

**9.** Indeed, it appears that the custody requirement was added without comment or debate when the Pennsylvania House of Representatives was considering passage of the Wiretap Act. *See* Legis. J.—House at 3145–47 (Sept. 21, 1978).

**10.** *See generally United States v. Ojeda Rios,* 495 U.S. 257, 263, 110 S.Ct. 1845, 1849, 109 L.Ed.2d 224 (1990) (construing the custody and sealing provision as reflecting a congressional purpose to ensure the reliability and integrity of evidence obtained by electronic interception); *United States v. Cantor,* 470 F.2d 890, 892 (3d Cir.1972) (describing the

of recorded evidence also exists in the context of one-party consensual interceptions,[11] the consent of a party to the communication lessens the constitutional concerns related to privacy as compared to those which pertain to non-consensual interceptions. *See White*, 401 U.S. at 751–52, 91 S.Ct. at 1126, *Blystone*, 519 Pa. at 464–65, 549 A.2d at 87. The absence of a provision for the immediate transfer and sealing of recorded evidence for one-party consensual interceptions under Section 5704(2)(ii) is therefore consistent with constitutional privacy considerations.

In addition, the General Assembly has enacted a comprehensive legislative scheme, which not only sets forth specific requirements for the interception of communications, but also contains the following exclusive remedy provision:

**(e) Exclusiveness of remedies and sanctions.**—The remedies and sanctions described in this subchapter with respect to the interception of wire, electronic or oral communications are the only judicial remedies and sanctions for non-constitutional violations of this subchapter involving such communications.

18 Pa.C.S. § 5721.1(e). The plain language of Section 5721.1(e) limits the availability of remedies to those grounds specifically enumerated, *see generally Commonwealth v. Donahue*, 428 Pa.Super. 259, 278–79, 630 A.2d 1238, 1248–49

federal custody and sealing provision as indicating a concern for confidentiality); *United States v. Kohne*, 358 F.Supp. 1053, 1058 (W.D.Pa.1973) (identifying confidentiality and chain of custody); *Commonwealth v. Vitello*, 367 Mass. 224, 327 N.E.2d 819, 850 (1975) (describing the requirement as a ministerial function to ensure the privacy and integrity of tapes); *People v. Nicoletti*, 34 N.Y.2d 249, 356 N.Y.S.2d 855, 313 N.E.2d 336, 338 (1974) (stating that "[t]he purpose of the requirement is at least threefold: to prevent tampering, alterations or editing; to aid in establishing a chain of custody; and to protect the confidentiality of the tapes").

11. *See generally United States v. Vancier*, 466 F.Supp. 910, 911 (S.D.N.Y.1979) (acknowledging that protection of the integrity of recorded evidence applies equally in the circumstance of consensual interceptions, but declining to impose a sealing requirement under the federal wiretap statute); ABA Standards for Criminal Justice—Electronic Surveillance 2–4.1 cmt. (2nd ed. 1980 & Supp.1986) (emphasizing the need for adequate safeguards to ensure the authenticity and accuracy of recordings made through consent surveillance).

(1993), among which neither the custodial requirement nor the policy of the district attorney's office respecting the timing of the transfer of recorded evidence is included.[12]   Moreover, while judicial enforcement of a regulation or policy governing the conduct of a criminal investigation may be appropriate where compliance is mandated either by a statute or as a matter of constitutional compliance, in this case adherence to the district attorney's policy was not so compelled.   *See generally United States v. Caceres*, 440 U.S. 741, 749–50, 99 S.Ct. 1465, 1470, 59 L.Ed.2d 733 (1979) (declining to suppress evidence based upon a violation of an Internal Revenue Service regulation involving one-party consent surveillance).[13]

In the absence of statutory language warranting a contrary result, we decline to read a specific requirement for transfer of recorded evidence into Section 5704(2)(ii), particularly when such omission apparently results from deliberate legislative decision.   *See generally Commonwealth v. Spotz*, 552 Pa. 499, 519, 716 A.2d 580, 590 (1998) (stating that a "court may not supply omissions in a statute when it appears that the matter

12.   The exclusivity provision in Section 5721.1(e) was added in response to the Electronic Communications Privacy Act of 1986.   *See supra* note 6; *see also* S.Rep. No. 508, 99th Cong., 2nd Sess. at 35 (1986), *reprinted in* 1986 U.S.C.C.A.N. 3555, 3589 (explaining that the states have two years to bring their respective statutes into compliance with the federal statute).   Section 5721.1, however, includes electronic communications, whereas the federal statute's exclusionary rule and corresponding exclusivity provision do not.   *See* 18 U.S.C. §§ 2515, 2518(10)(a), (c). Under federal law, therefore, such communications receive only the protection afforded by the judicially crafted exclusionary rule.   *See generally* Lieb, *E–Mail and the Wiretap Laws*, 34 Harv. J. on Legis, at 429–30.

13.   The Court in *Caceres* reasoned that:
   Regulations governing the conduct of criminal investigations are generally considered desirable, and may well provide more valuable protection to the public at large than deterrence flowing from the occasional exclusion of items of evidence in criminal trials.   Although we do not suggest that a suppression order in this case would cause the IRS to abandon or modify its surveillance regulations, we cannot ignore the possibility that a rigid application of an exclusionary rule to every regulatory violation could have a serious deterrent impact on the formulation of additional standards to govern prosecutorial and police procedures.
   *Id.* at 755–56, 99 S.Ct. at 1473.

may have been intentionally omitted").[14]   Nor will we engraft such a requirement on statutory language based solely upon the district attorney's policy regarding the transfer of recorded interceptions.   Given the consensual aspect to the intercept, the evidential requirements related to authenticity and integrity of evidence, and in particular chain of custody, serve to protect the salient interests.   *See generally Schultz,* 422 A.2d at 107;  Pa.R.E. 901(a).[15]

The order of the Superior Court is reversed and the case is remanded for further proceedings.

Justice NEWMAN did not participate in the consideration or decision of this case.

Former Chief Justice FLAHERTY did not participate in the decision of this case.

Chief Justice ZAPPALA files a dissenting opinion in which Justice NIGRO joins.

Chief Justice ZAPPALA, dissenting.

Because I believe the lower courts properly suppressed the tape recordings as violative of the Wiretapping and Electronic Surveillance Control Act, I dissent.   The majority improperly focuses on the apparent need to engraft an additional element (a specific time requirement for transfer of recorded evidence)

**14.**   Courts in other jurisdictions have refused to extend post-authorization requirements applying to non-consensual interceptions to the consensual interception arena.   *See generally United States v. Mendoza,* 574 F.2d 1373, 1377 (5th Cir.1978); *People v. McGee,* 49 N.Y.2d 48, 424 N.Y.S.2d 157, 399 N.E.2d 1177, 1182–83 (1979); *State v. Napoli,* 373 So.2d 933, 934 (Fla.Dist.Ct.App.1979); *State v. Schultz,* 176 N.J.Super. 65, 422 A.2d 105, 106–07 (1980).

**15.**   As an alternate ground for affirming the order of suppression as to the February 1998 interception, Spangler argues that the Commonwealth failed to prove that the approval preceded the interception. Spangler bases such argument on the lack of clarity concerning the dates appearing upon the documents evidencing the informant's consent and the prosecutor's approval.   The suppression court's opinion resolves this issue in finding that "all the requirements of the statute regarding such intercepts were complied with up to the point where the confidential informant was given his wire and sent out to make purchases from Yuri Spangler."   The record supports this finding.

to the provision of the Wiretap Act dealing with one-party consensual interceptions, 18 Pa.C.S. § 5704(2)(ii). To the contrary, one need not alter the statutory language to find an illegal interception here. The lower courts recognized that Section 5704(2)(ii) provides that the Attorney General or District Attorney (or its designee), who authorizes the interception, shall act as the custodian of the recorded evidence obtained therefrom. As such requirement was not satisfied here, the lower courts correctly ruled that the tape recordings were inadmissible at trial.

The record establishes that, pursuant to Section 5704(2)(ii), the District Attorney of Chester County designated an Assistant District Attorney to authorize interceptions relating to illegal drug transactions occurring on three occasions: February 11 or 12, 1998, March 12, 1998, and May 27, 1998. None of the tapes were placed into the District Attorney's custody within a reasonable time after interception. The tape of February 11 or 12, 1998, was returned nearly two weeks later on February 24, 1998. The tape of March 12, 1998, was returned over two weeks later on March 31, 1998. Finally, the tape of May 27, 1998, was returned over six weeks later on July 13, 1998. In suppressing the evidence as violative of the custodial requirement, the trial court found that it was the policy of the District Attorney's Office to have any tape recordings returned "as soon as practicable." Trial court opinion at 236. The court further found that the police headquarters and the District Attorney's Office are located only 6 blocks away from each other. *Id.* at 236. After concluding that there was no good reason why the tape recordings were detained by the police detective, rather than promptly returned to the District Attorney's Office, the trial court found a clear violation of Section 5704(2)(ii).

The majority looks past this provision and instead examines the section dealing with *non-consensual* interceptions, which provides that, upon the expiration of the order authorizing the interception, the recordings are to be immediately transferred to the judge who issued the order and sealed under his direction. 18 Pa.C.S. § 5714(b). This provision deals with a

different type of interception than the one at issue in this case and provides for a different procedure to be employed. It is simply irrelevant to the analysis here. . The fact that Section 5704(2)(ii) does not include the word "immediately" or some other time designation prior to the custodial language is of no moment. In order for the District Attorney's Office to act as the custodian of the tape recordings, it must possess and control the recordings within a reasonable time after interception. It did not do so here. The majority's proposition that the Legislature in some way intended to permit police detectives to retain tape recordings after one-party consensual interceptions is belied by the plain statutory language requiring the District Attorney's Office to act as custodian of the evidence in these cases.

Finally, the majority relies on Section 5721.1(e), which states that the remedies described in that subchapter are the "only judicial remedies and sanctions" for nonconstitutional violations of the statute. The trial court, however, relied on Section 5721(a)(3), which provided that any party may move to exclude the contents of any wire, electronic or oral communication on the ground that the requirements of Section 5704 have not been met.[1] As the custodial requirement of Section 5704 was not satisfied here, the trial court properly suppressed the tape recordings.

Accordingly, I dissent.

Justice NIGRO joins this dissenting opinion.

---

1. As the majority notes on page 511, Section 5721(a)(3) was repealed on February 18, 1998. Section 5721.1(b)(1) was enacted, effective on February 18, 1998, to replace Section 5721(a)(3). The only relevant statutory change is the substitution of the phrase "Unless intercepted pursuant to an exception set forth in section 5704 ..." for the phrase "The interception unless made in accordance with section 5704...."