**[J-47-2024] [MO: Brobson, J.]**

# IN THE SUPREME COURT OF PENNSYLVANIA
## EASTERN DISTRICT

| | | |
|---|---|---|
| JASON WINIG, | : | No. 32 EAP 2023 |
| | : | |
| Appellant | : | Appeal from the Order of the |
| | : | Commonwealth Court entered on |
| | : | February 24, 2023, at No. 1423 CD |
| v. | : | 2021, affirming the Order of the |
| | : | Court of Common Pleas of |
| | : | Philadelphia County, Civil Division, |
| THE OFFICE OF THE DISTRICT | : | entered on June 21, 2021, at No. |
| ATTORNEY OF PHILADELPHIA, | : | 200600251. |
| LAWRENCE S. KRASNER, ESQUIRE, | : | |
| BRANWEN MCNABB, ESQUIRE, | : | ARGUED:  September 10, 2024 |
| MICHELLE MICHELSON, ESQUIRE, | : | |
| WILLIAM BURROWS, ESQUIRE AND | : | |
| HELEN PARK, ESQUIRE, | : | |
| | : | |
| Appellees | : | |

## DISSENTING OPINION

**JUSTICE McCAFFERY**                                      **DECIDED: November 19, 2025**

I agree with Justice Mundy and join her dissenting opinion in full.  I write separately because I believe the conduct attributable to the District Attorney and his assistant district attorneys (Prosecutors) gives rise to civil liability under the Wiretapping and Electronic Surveillance Control Act (the Wiretap Act or the Act),[1] and because the General Assembly clearly and unambiguously waived sovereign and high public official immunities for violations of the Act.  Accordingly, I dissent.

To begin, it is necessary to reiterate some of the key facts in the underlying case. While involved in an acrimonious relationship, Braverman, a private individual, recorded various conversations (the Recordings) between herself and Appellant, another private

---

[1] *See* 18 Pa.C.S. §§ 5701-5782.

individual, without his knowledge or consent. Braverman later reported Appellant to the police department for domestic violence, sexual abuse, and child abuse. As part of her criminal report, Braverman provided the police, and thereafter, Prosecutors, with the Recordings. Appellant was arrested and charged with various crimes based on the evidence contained in the Recordings. *See* Trial Court Opinion, 12/21/2021, at 2 (unpaginated). In subsequent proceedings, the Prosecutors disclosed and used the Recordings during multiple hearings that took place on July 17, 2018, September 7, 2018, January 18, 2019, and November 18, 2020, as well as in several court filings.[2] *See id.* Ultimately, the criminal case against Appellant was *nolle prossed* after the trial court determined that the Recordings were created **in violation** of the Wiretap Act, and Prosecutors **were prohibited** from using them as evidence. *See Winig*, 293 A.3d at *2. The court further found Prosecutors did not meet the Wiretap Act's "crime-victim exception."[3] *See* Reproduced Record at 132a (Suppression Court Opinion, 4/12/2019, at 6).

---

[2] The Commonwealth Court summarized the repeated disclosures as follows:

> Prosecutors referenced and quoted the Recordings during the preliminary hearing in the Criminal Action. Prosecutors referenced and quoted the Recordings in their response to [Appellant]'s motion to quash the return of transcript and in the hearing that followed in the Criminal Action. Prosecutors referenced and quoted the Recordings in their response to Winig's motion to compel the surrender of Winig's phone and in the hearing that followed in the Criminal Action. Prosecutors referenced and quoted the Recordings in their motion to admit evidence of other acts and in the hearing that followed in the Criminal Action. Prosecutors referenced and quoted the Recordings in their response to [Appellant]'s pretrial motions and in the hearing that followed in the Criminal Action.

*Winig v. Off. of Dist. Att'y of Philadelphia*, 293 A.3d 1253, *1 (Pa. Commw. 2023) (unreported) (citations omitted).

[3] *See* 18 Pa.C.S. § 5704(17).

Appellant subsequently filed the instant civil action against Prosecutors, seeking damages for purported violations of the Wiretap Act. He alleged: (1) Prosecutors knew or should have known that the Recordings were obtained in violation of the Wiretap Act and that their use and disclosure thereof in prosecuting him was a violation of the Act; (2) Prosecutors wrongfully disclosed and used the Recordings in various public forums, including court proceedings and filings, during the criminal case against him. And as a result of their actions, Appellant claimed he suffered humiliation, a loss of privacy, and injury to his reputation as a result of Prosecutors' use and disclosure of the Recordings. Additionally, and relevant to the present matter, Appellant argued that Prosecutors were not immune from liability, as the Wiretap Act expressly waives sovereign immunity. Prosecutors filed preliminary objections, asserting Appellant's claims were barred by prosecutorial and high public official immunity.[4] In its June 21, 2021, the trial court sustained Prosecutors' preliminary objections on the grounds of prosecutorial and high public official immunity and dismissed Appellant's complaint. The Commonwealth Court affirmed the trial court's order.

Turning to the Wiretap Act, which is at issue in this case, the Act specifically was "designed to **protect individual privacy** while also giving law enforcement authorities a tool to combat crime. The statute generally prohibits intercepting, using, or disclosing private communications except pursuant to specified procedures. *See, e.g.,* 18 Pa.C.S. § 5708 (pertaining to court orders authorizing interceptions)." *Karoly v. Mancuso*, 65 A.3d 301, 303 (Pa. 2013) (emphasis added).[5] *See also* PA. CONST. ART. I, § 8 ("The people

---

[4] Additionally, Prosecutors asserted Appellant's complaint failed to plead sufficient facts to state a cause of action under the Wiretap Act, and his invasion of privacy was barred by the one-year statute of limitations. Those issues are not before us.

[5] *See also Commonwealth v. Blystone*, 549 A.2d 81, 86 (Pa. 1988) (stating the "electronic surveillance statute strikes a balance between citizens' legitimate expectation of privacy (continued…)

shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant."). Indeed, it merits emphasizing the fundamental importance of privacy, which is provided for in Article I, Section 8 of the Pennsylvania Constitution. *See Boettger v. Miklich*, 633 A.2d 1146, 1148 (Pa. 1993) (noting that "[n]o violations of any provisions of the Act will be countenanced, nor will the failure of prosecutors to diligently follow the strict requirements of the Act be lightly overlooked") (quotation omitted). At play in the present matter, we are presented with the tension between protecting individual privacy and empowering the government (and its officials) to carry out its work of servicing the public good. If holding the government accountable for violations of the Wiretap Act will not prevent the government from advancing the public interest (as the inclusion of the sovereign immunity waiver in the Act suggests), then the "public good" part of the equation falls by the wayside, but we still are left with the crucial interest in protecting individual privacy. Thus, in these matters, an individual's privacy interest should prevail over immunity for government officials, including those who fall under high public official immunity.

In assessing the provisions of the Wiretap Act, Subchapter B governs the interception of wire, electronic, and oral communications. Pursuant to Section 5703, the Act makes it a third-degree felony if "a person," *inter alia*, "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept

---

and the needs of law enforcement officials to combat crime."). "Because of th[e] privacy concern, the provisions of the Wiretap Act are strictly construed." *Commonwealth v. Spangler*, 809 A.2d 234, 237 (Pa. 2002) (citation omitted).

any wire, electronic or oral communication[.]" 18 Pa.C.S. § 5703(1).[6]  Section 5717

pertains to the investigative disclosure or use of such contents of wire, electronic, or oral

communications or derivative evidence, and provides, in relevant part:

> **(a) Law enforcement personnel.--** Any **investigative or law enforcement officer** who, under subsection (a.1), (b) …, has obtained knowledge of the contents of any wire, electronic or oral communication, or evidence derived therefrom, **may disclose** such contents or evidence to another investigative or law enforcement officer **to the extent that such disclosure is appropriate to the proper performance of the official duties of the officer making or receiving the disclosure**.

> **(a.1) Use of information.--** Any investigative or law enforcement officer who, by any means authorized by this subchapter, has obtained knowledge of the contents of any wire, electronic or oral communication or evidence derived therefrom **may use such contents or evidence to the extent such use is appropriate to the proper performance of his official duties**.

> **(b) Evidence.--** Any person who by any means authorized by this chapter, has obtained knowledge of the contents of any wire, electronic or oral communication, or evidence derived therefrom, may disclose such contents or evidence to an investigative or law enforcement officer and may disclose such contents or evidence while giving testimony under oath or affirmation in any criminal proceeding in any court of this Commonwealth or of another state or of the United States or before any state or Federal grand jury or investigating grand jury.

18 Pa.C.S. § 5717 (emphases added).  Section 5702 defines an **"**[i]nvestigative or law

enforcement officer" as:

> Any **officer** of the United States, of another state or political subdivision thereof or **of the Commonwealth or political subdivision thereof**, who is empowered by law to conduct investigations of or to make arrests for offenses enumerated in this chapter or an equivalent crime in another jurisdiction, and **any attorney authorized by law to prosecute or participate in the prosecution of such offense**.

---

[6] Section 5704 sets forth numerous exceptions to the general prohibition in Section 5703. When originally enacted, none of the exceptions in Section 5704 required an order of court to conduct interceptions.  The non-applicability of those exceptions is not in dispute.

18 Pa.C.S. § 5702 (emphases added). Relatedly, "person" is defined as "[a]ny employee, or agent of the United States or any state or political subdivision thereof, and any individual, partnership, association, joint stock company, trust or corporation." *Id.*

Sections 5725 provides a civil cause of action for any violation of the Act as well as waiver:

> **(a) Cause of action.--** Any person whose wire, electronic or oral communication is intercepted, disclosed or used in violation of this chapter shall have a civil cause of action against **any person** who intercepts, **discloses** or uses or procures any other person to intercept, disclose or use, such communication; and shall be entitled to recover from any such person:
>
> > (1) Actual damages, but not less than liquidated damages computed at the rate of $100 a day for each day of violation, or $1,000, whichever is higher.
> >
> > (2) Punitive damages.
> >
> > (3) A reasonable attorney's fee and other litigation costs reasonably incurred.
>
> **(b) Waiver of sovereign immunity.--** To the extent that the Commonwealth and any of its officers, officials or employees would be shielded from liability under this section by the doctrine of sovereign immunity, such immunity is hereby waived for the purposes of this section.
>
> **(c) Defense.--** It is a defense to an action brought pursuant to subsection (a) that the actor acted in good faith reliance on a court order or the provisions of this chapter.

18 Pa.C.S. § 5725. Lastly, the Wiretap Act provides a separate cause of action requesting relief by means of removal of said investigative or law enforcement officer. *See* 18 Pa.C.S. § 5726(a) ("Any aggrieved person shall have the right to bring an action in Commonwealth Court against any investigative or law enforcement officer, public official or public employee seeking the officer's, official's or employee's removal from office or employment on the grounds that the officer, official or employee has intentionally violated the provisions of this chapter. If the court shall conclude that such officer, official or

employee has in fact intentionally violated the provisions of this chapter, the court shall order the dismissal or removal from office of said officer, official or employee.").

The Majority concedes that Prosecutors are "investigative or law enforcement officers," as defined by Section 5702 of the Wiretap Act, and also qualify as "persons" because they are employees of the city of Philadelphia, a political subdivision of the Commonwealth of Pennsylvania. *See* Majority Opinion at 15. Notwithstanding such concession, the Majority nonetheless concludes Prosecutors are immune from civil liability because of high public official immunity. This opinion finds its support in Section 5725(b) of the Act, whose language provides: "To the extent that the Commonwealth and any of its **officers, officials** or **employees** would be shielded from liability under this section by the doctrine of sovereign immunity, such immunity is hereby waived for the purposes of this section." 18 Pa.C.S. § 5725(b) (emphasis added). To reach this conclusion, the Majority assumes that since the General Assembly failed to specifically mention high public official immunity, it must have intentionally limited the immunity waiver to sovereign immunity. In doing so, the Majority missed the forest because of the trees.

High public official immunity is an offshoot of sovereign immunity. It evolved out of a commonsense recognition that the sovereign — meaning the government — acts by and through its officials, who must be provided immunity for their conduct and actions taken in furtherance of their official duties. Read in context, as Justice Mundy so aptly discusses, the language cited above and used by the Majority to omit these public officials from the waiver provision actually supports the opposite interpretation. Section 5725(b) specifically and unequivocally includes reference to high public officials without using the actual term itself. Why else would the General Assembly have referenced "officers, officials or employees" if it meant to limit its waiver of immunity to the sovereign? The

answer is the General Assembly meant to include those "officers, officials or employees" acting on behalf of the sovereign. Here, that is prosecutors and police.

As an aside, it is further worth noting the extensive procedures that must take place in order for an individual to obtain an authorized, legal interception.[7] *See Boettger*, 633 A.2d at 1148 (stating Wiretap Act "does contain strict guidelines as to how and when electronic surveillance methods shall be permitted."). Pursuant to Section 5708, a district attorney or assistant district attorney generally makes a written application to a Superior Court judge, a neutral party, for an order authorizing the interception of a wire, electronic communication "involving suspected criminal activities when such interception may provide evidence of the commission of any of the following offenses, or may provide evidence aiding in the apprehension of the perpetrator or perpetrators of any of the [enumerated] offenses[.]" 18 Pa.C.S. § 5708. Section 5709 details the contents of the application, including, *inter alia*, "[a] sworn statement by the investigative or law enforcement officer who has knowledge of relevant information justifying the application[.]" 18 Pa.C.S. § 5709(3). Pursuant to Section 5710, after reviewing the application, the judge then "may enter an ex parte order … authorizing the interception of wire, electronic or oral communications anywhere within the Commonwealth, if the judge determines on the basis of the facts submitted by the applicant that there is probable cause for belief" that certain conditions exist, including that "the person whose communications are to be intercepted is committing, has or had committed or is about to commit an offense as provided in section 5708[.]" 18 Pa.C.S. § 5710(a)(1). Under 5712, if a judge authorizes a wiretap, the district attorney and assistant district attorney is responsible for the supervision of the interception as well as progress reports and final reports concerning the interception. *See* 18 Pa.C.S. § 5712. Lastly, in accordance with

---

[7] My characterization is limited to the status of the parties at issue. I recognize that other legal authorities, including the Attorney General, also are regulated by the Wiretap Act.

Section 5715, all documentation related to the interception — applications, reports, orders, recordings — shall be sealed and held by the Superior Court and generally "may be disclosed only upon a showing of good cause before a court of competent jurisdiction[.]" *See* 18 Pa.C.S. § 5715. As can be seen, the Wiretap Act and its provisions are limited exclusively to the law enforcement community — courts, district attorneys and assistant district attorneys, and investigating police officers. These are the precise categories of "persons" the Majority seeks to immunize as high public officials. Doing so creates an absurd oxymoron where the General Assembly waived sovereign immunity, including immunity to government officers, officials, and employees, yet those same actors are immune from liability because the General Assembly failed to use the magic words, "high public officials."

This context provides further support for the conclusion that high public official immunity is not separate from sovereign immunity under the Act, and therefore, not waived by the General Assembly.

> In Pennsylvania, high public official immunity is a long-standing category of common law immunity that acts as an absolute bar to protect high public officials from lawsuits arising out of actions taken in the course of their official duties and within the scope of their authority. The purpose is to protect the high public official from liability, not for his or her own personal benefit, but for the benefit of the public he or she serves….
>
> Specifically, absolute immunity from civil liability for high public officials is the only legitimate means of removing any inhibition which might deprive the public of the best service of its officers and agencies. Thus, the principle of high public official immunity, while serving a unique role in protecting public officials while acting in their official capacity on behalf of the public, is grounded in the same general, overarching principle of immunity for the public good, as derived from the English concept of sovereign immunity. The scope of common law immunity, including high public official immunity, is very broad:
>
>> Absolute privilege, as its name implies, is unlimited and exempts a high public official from all civil suits for damages arising out of false defamatory statements and even from statements or actions

> motivated by malice, provided the statements are made or the actions are taken in the course of the official's duties or powers and within the scope of his authority, or as it is sometimes expressed, within his jurisdiction ...

> This Court has never called into question, much less overruled, the common law doctrine of absolute privilege for high public officials. In fact, the privilege of immunity has consistently been upheld and was specifically found not to have been abrogated by the legislature.

*Doe v. Franklin Cnty.*, 174 A.3d 593, 603 (Pa. 2017) (citations, quotation marks, and emphases omitted). *See also Durham v. McElynn*, 772 A.2d 68, 70 (Pa. 2001) (stating high public official immunity applies to both district attorneys and assistant district attorneys and these individuals are protected under an immunity umbrella because "it is the public interest in seeing that the official not be impeded in the performance of important duties that is pivotal."). It is readily apparent that high public official immunity is essentially a subset of sovereign immunity, as it fundamentally seeks to establish immunity in service of the public good. *See Doe v. Franklin Cnty.*, 174 A.3d at 603. As mentioned above, sovereign immunity is immunity for the government, so that it may pursue actions in service of the public good. High public official immunity simply protects the individuals in their capacity as government officials so that those individuals, in pursuing their work, can serve the public interest. By providing for waiver of sovereign immunity, the General Assembly essentially is permitting the government to be sued because it is less concerned with those suits hampering the government's ability to serve the public good. If that underlying interest were not a concern for the General Assembly when enacting the Wiretap Act, then it makes no sense to find that high public official immunity applies, either — as that immunity would serve no purpose. To the contrary, holding incompetent or corrupt officers, officials or employees accountable for violating the Wiretap Act protects the public good and preserves the integrity of the Act itself while simultaneously protecting individuals' privacy and reputation rights.

Justice Mundy aptly draws the conclusion that the General Assembly intended to allow suits to proceed against "any person" under Section 5725(a) based on the complete language of the Wiretap Act as well as the Act's legislative history.[8] *See* Dissenting Opinion at 1 (Mundy, J.). I agree with her well-reasoned analysis but also because of a practical application of the Act when applied to the facts *sub judice*.

Here, the illegal interception was committed by Braverman and the Recordings were submitted to the Prosecutors. The interceptions were not subject to a court order; therefore, they were not protected by the Act. Such circumstances are specifically contemplated under Section 5725, which provides cause for a civil suit based on an illegal interception. However, here, the Prosecutors should have immediately identified the Recordings as illegally obtained and sought Fifth Amendment Counsel for Braverman. Instead, the Prosecutors dangled contents of the Recordings in multiple court proceedings and filings that were not under court-seal. The Recordings then were litigated before the trial court who determined their interception was in violation of Wiretap Act and the court declared that such use was inadmissible. The Prosecutors could have filed the Recordings with the trial court under seal, and then filed a motion *in limine*, thereby divulging the existence of the interceptions without revealing their contents in a public forum. The Prosecutors then could have sought a court order to use the Recordings in a court proceeding. They chose not to. Instead, the Prosecutors unilaterally revealed contents of the Recordings in public *via* certified transcripts and court documents; thereby, exposing themselves to direct liability under the Act.

As mentioned above, the General Assembly waived sovereign immunity for "any person" who "disclose[d] or use[d] … such communication" that was done in violation of

---

[8] Notably, the Majority recognizes the possibility of this interpretation, stating: "Prosecutors technically fit within the broad category of 'persons' that may face suit pursuant to Section 5725(a)." Majority Opinion at 15.

the Wiretap Act. 18 Pa.C.S. § 5725(a). This includes district attorneys and assistant district attorneys who are employees of a political subdivision. *See* 18 Pa.C.S. § 5702 (defining "person"). Furthermore, it would be nonsensical if only police officers or other categorically similar law enforcement officers were civilly liable for divulging intercepts, but not district attorneys and assistant district attorneys, when they work in concert during a criminal investigation. Moreover, the Wiretap Act's provisions are silent with respect to treating district attorneys and assistant district attorneys differently than law enforcement officers. Why then should this Court treat district attorneys and assistant district attorneys any differently than law enforcement officers under this Act? If the General Assembly meant to exclude district attorneys and assistant district attorneys, would not they have excluded them from the definition of "persons"? It seems illogical to say district attorneys and assistant district attorneys constitute persons who may violate the Wiretap Act if they nonetheless will be shielded from liability under that Act for actions within the scope of their position. This lack of differentiation further supports the notion that they should not be excluded from the definition of "person" under the Act.

The Wiretap Act provides extensive procedures and guardrails to law enforcement — to guide their investigation and to ensure the law governing interceptions is strictly enforced. Here, it is evident the Prosecutors either made an egregious mistake, were grossly incompetent, or committed intentional misconduct. Any violation is subject to penalty including (1) Section 5725 civil liability or (2) Section 5726 removal from office. Therefore, I would conclude that Prosecutors are not immune from suits for civil liability and are subject to removal for their willful, unjustified, and unlawful conduct. Moreover, I would remand to the trial court with direction to deny the Prosecutors' preliminary objections and dispose of issues raised in the well-pled complaint. Accordingly, I dissent.

Justice Mundy joins this dissenting opinion.